**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **FRED TURNER, Administrator for the Estate of Lawrence Turner, deceased,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CASE NO. 2:22-cv-624-MHT** |
| **JEFFERSON S. DUNN, Alabama Prison Commissioner; PATRICIA JONES, Warden of Bullock Correctional Facility; and DAVID LAMAR, Warden of Bullock Correctional Facility; each named in his/her individual capacity,** | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES the Plaintiff, Fred Turner, as Administrator of the Estate of Lawrence Turner, deceased, by and through his attorneys, upon pursuant to this Court's Order (Doc. 23), files the Plaintiff's First Amended Complaint against each of the individually named Defendants: Jefferson S. Dunn, Patrice Jones, and David Lamar, each in his/her individual capacity.

## I. JURISDICTION AND VENUE

1. Plaintiff Fred Turner, as Administrator of the Estate of Lawrence Turner, deceased, brings this action against each of the named Defendants for the violation of the Eighth and Fourteenth Amendment rights of Lawrence Turner, deceased, for failing to prevent prisoner-on-prisoner violence and failing to provide safe conditions of confinement. Each named Defendant has supervisory authority of the correctional officers (such as sergeants, lieutenants, captains, wardens), correctional officers, basic correctional officers, and cube correctional officers.

2. Plaintiff institutes these proceedings and invokes the jurisdiction of this Court pursuant to 42 U.S.C §1983, et. seq. to assert claims and recover damages for violations of the Eighth Amendment and Fourteenth Amendment to the U.S. Constitution by Defendants Jefferson S. Dunn, Patrice Jones, and David Lamar, while acting under color of state law, and while Lawrence Turner, deceased, was incarcerated as the Bullock Correctional Facility.

3. These constitutional violations and claims brought pursuant to 42 U.S.C §1983 arise from each Defendant's deliberate indifference for failing to prevent prisoner-on-prisoner violence and for failing to provide safe conditions of confinement resulting in injuries and the death of Lawrence Turner, deceased. The Plaintiff also files a pendant state law claims arising therefrom.

4. This Court has original jurisdiction of this civil action pursuant to 42 U.S.C. §1331 and 42 U.S.C. §1334(a)(3)-(4) as the Plaintiff asserts claims arising under the laws

of the United States, including 42 U.S.C §1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367, as this claim is so related to the Plaintiff's federal claims that it forms a part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in the Northern Division of the Middle District of Alabama under 28 U.S.C. § 1391(b) because all Defendants Dunn, Jones and Lamar reside in this district and the alleged incidents, events, actions and occurrences giving rise to the these causes of action occurred in the Middle District of Alabama.

## II. PARTIES

6. The named Plaintiff, Fred Turner (hereinafter "Plaintiff or "Mr. Turner") is a citizen of the United States and is the lawful administratrix of the deceased, Lawrence Turner. At the time of his death, Lawrence Turner, deceased, was a citizen of the United States. Plaintiff is over the age of nineteen years. Plaintiff files herewith a copy of the State's Certificate of Death verifying the date of death of Lawrence Turner, deceased, on May 5, 2021. (Attached as Exhibit A).

7. The Defendant, Jefferson S. Dunn, (hereinafter "Mr. Dunn") was the acting Alabama Prison Commissioner, and is named only in his individual capacity. Under Alabama law, Mr. Dunn was entrusted with the proper operation and management of the Alabama Prison System, including the Bullock Correctional Facility. These

responsibilities included, but are not limited to, the protection of inmates, the prevention of prisoner-on-prisoner violence, the obligation to provide safe conditions of confinement, and the supervision and management of jail employees, including those employed at the Bullock Correctional Facility. Mr. Dunn participated in the alleged actions while acting under color of law and within the line and scope of his duties.

8. The Defendant, Patrice Jones, is a Correctional Warden at the Bullock Correctional Facility, and is named only in her individual capacity. Under Alabama law, Ms. Jones is entrusted with the proper operation and management of the Bullock Correctional Facility. These responsibilities include, but are not limited to, the protection of inmates, the prevention of prisoner-on-prisoner violence, the obligation to provide safe conditions of confinement, and the supervision and management of jail employees, including those employed at the Bullock Correctional Facility. Ms. Jones participated in the alleged actions while acting under color of law and within the line and scope of his duties.

9. The Defendant, David Lamar, is a Correctional Warden at the Bullock Correctional Facility, and is named only in his individual capacity. Under Alabama law, Mr. Lamar is entrusted with the proper operation and management of the Bullock Correctional Facility. These responsibilities include, but are not limited to, the protection of inmates, the prevention of prisoner-on-prisoner violence, the obligation to provide safe conditions of confinement, and the supervision and management of jail employees,

including those employed at the Bullock Correctional Facility. Mr. Lamar participated in the alleged actions while acting under color of law and within the line and scope of his duties.

10. Defendant Guard(s) are unidentified and unnamed guards employed by the Alabama Department of Corrections at the Bullock Correctional Facility, and who participated in the wrongful conduct asserted in each count of Plaintiff's Complaint. The Plaintiff reserves the right to amend this Complaint and name such unidentified guard(s) at a later time when so identified.

## III. BACKGROUND

11. On April 2, 2019, the United States, through the U.S. Department of Justice's Civil Rights Division and the three U.S. Attorney's Offices for the State of Alabama, notified the State of Alabama and each of the named defendants of its findings that, in violation of the Constitution, prisoners housed in Alabama's Prisons for Men, including the Bullock Correctional Facility, are at serious risk of death, physical violence, and abuse at the hands of other prisoners.

12. Defendants Dunn, Jones and Lamar have failed or refused to correct the unconstitutional conditions at Bullock Correctional Facility as identified by the United States in its April 2019 and July 2020 findings reports.

13. Since the United States notified the State of its findings, Alabama's Prisons for Men, including the Bullock Correctional Facility, remained extremely overcrowded,

prisoner-on-prisoner homicides have increased, prisoner-on-prisoner violence has continued unabated, the physical facilities have remained inadequate, use of excessive force by security staff has remained common, and staffing rates have remained critically and dangerously low.

14. In the two years following the United States' original notification to the Defendants Dunn, Jones and Lamar of the unconstitutional conditions of confinement, prisoners at Alabama's Prisons for Men, including Bullock Correctional Facility, have continued daily to endure a substantial risk of serious harm, including death, physical violence, and sexual abuse at the hands of other prisoners.

15. The unconstitutional conditions are pervasive and systemic across Alabama's Prisons for Men, including the Bullock Correctional Facility, as indicated by documented data and examples of violence, sexual abuse, excessive force, and unsafe and unsanitary conditions.

16. Defendants Dunn, Jones and Lamar are deliberately indifferent to these serious and systemic constitutional problems present in Alabama's Prisons for Men, including the Bullock Correctional Facility.

17. Beginning after the April 2019 findings report and continuing after the July 2020 findings report, the United States engaged in multiple rounds of negotiations with the State, including Mr. Dunn. Thereafter, the United States determined that constitutional compliance cannot be secured by voluntary means, and judicial action

became necessary to remedy the violations of law identified in the United States' findings reports and to vindicate the rights of the individuals incarcerated in Alabama's Prisons for Men, including the Bullock Correctional Facility.

18. On December 9, 2020, the United States filed suit against the State of Alabama and the Alabama Department of Corrections in the United States District Court for the Northern District of Alabama (Case 2:20-cv-01971-JHE; and on May 19, 2021, the United States filed its Amended Complaint.

19. The Bullock Correctional Facility is a medium-security, or Security Level IV, prison for men in Union Springs, Alabama with a designed capacity of approximately 919 men.

20. In 2016, the United States notified Defendants Dunn, Jones and Lamar that it had opened an investigation into whether the conditions in Alabama's correctional facilities for men, including the Bullock Correctional Facility, violated the Eighth Amendment of the United States Constitution.

21. The United States investigated whether Mr. Dunn and others (1) adequately protect prisoners from physical harm and sexual abuse at the hands of other prisoners; (2) adequately protect prisoners from use of excessive force and sexual abuse by security staff; and (3) provide prisoners with sanitary, secure, and safe living conditions.

22. In April 2019, the United States notified the named Defendants that the United States had reasonable cause to believe that Defendants Dunn, Jones and Lamar

were violating the Eighth Amendment rights of prisoners housed in Alabama's correctional facilities, including the Bullock Correctional Facility, by failing to protect prisoners from physical harm and sexual abuse at the hands of other prisoners and by failing to provide safe conditions.

23. In July 2020, the United States notified the named Defendants that the United States had reasonable cause to believe that Defendants were violating the Eighth Amendment by also failing to protect prisoners from excessive force by staff. The United States' findings were outlined in its April 2019 and July 2020 findings reports.

24. Defendants Dunn, Jones and Lamar have failed to protect prisoners in Alabama's Prisons for Men, including the Bullock Correctional Facility, from serious harm and a substantial risk of serious harm at the hands of other prisoners, including serious injury and death.

25. There have been dozens of homicides across Alabama's Prisons for Men, including the Bullock Correctional Facility, in the last several years. The United State provided each of Defendants Dunn, Jones and Lamar with information illustrating the number of prisoner-on-prisoner homicides by facility, as reported by the Alabama Department of Corrections (hereinafter "ADOC").

26. The pattern of violence at Alabama's Prisons for Men, including the Bullock Correctional Facility, is pervasive and systemic information demonstrates that the unconstitutional conditions identified during the investigation continue.

27. In calendar year 2018, at least ten men were killed by other prisoners in Alabama's Prisons for Men.

28. In 2018, the homicide rate in Alabama's Prisons for Men was more than seven times the national average for prisons.

29. ADOC reports homicides by fiscal year. According to ADOC's publicly available data for Fiscal Year 2019, from October 2018 through September 2019, at least 11 prisoners were killed by other prisoners.

30. In Fiscal Year 2020, at least 16 prisoners were killed by other prisoners according to ADOC's publicly available data. This includes the following: in December 2019, a 31-year-old prisoner at Bibb died after being assaulted by another prisoner; in March 2019, at Bibb, two prisoners were killed by other prisoners in two separate incidents in the span of three days; in June 2020, a 67-year-old prisoner was beaten to death by another prisoner at Bullock Correctional Facility; in May 2020, a 33-year-old prisoner died after being assaulted by another prisoner at Elmore; in May 2021, a 23-year-old prisoner was stabbed to death by another prisoner at Fountain. The victim was due to be released the next day; in September 2020, a 46-year-old prisoner at Fountain was stabbed to death by another prisoner in an open dormitory; in June 2019, a 52-year-old prisoner at Staton was discovered with stab wounds only after he had been stabbed multiple times in an open dormitory by another prisoner. He was airlifted to an outside hospital where he later died; in April 2020, a 43-year-old prisoner was stabbed to death

by another prisoner at Ventress; in October 2019, a 52-year-old prisoner at Ventress died after being stabbed through the eye by another prisoner.

31. Over the last several years, Alabama's Prisons for Men have become even more deadly. The United States has provided the named Defendants with the trends in prisoner-on-prisoner homicides within all of Alabama's Prisons for Men from Fiscal Years 2015 to 2020.

32. ADOC's reports do not reflect all deaths from prisoner-on-prisoner homicides. For example, in November 2020, a 48-year-old prisoner at Bullock was beaten and stabbed to death. Additionally, in February 2021, a 38-year-old prisoner at St. Clair was stabbed to death in an open dormitory.

33. Defendants Dunn, Jones and Lamar do not accurately classify or identify the cause of every prisoner death. By way of example, in February 2018, a prisoner at Kilby died from multiple stab wounds to his head, abdomen, back, and arm. Defendant Dunn classified the prisoner's death as "Natural" rather than "Homicide." Similarly, in November 2017, an autopsy revealed a prisoner at Elmore died from blunt force trauma to the head. Defendant Dunn classified the death as "Natural."

34. According to the DOJ, Defendant Dunn publicly reported at least 159 prisoner deaths for Fiscal Year 2020 and 75 prisoner deaths in the first five months of Fiscal Year 2021. However, Defendant Dunn had not identified the causes of some of

these deaths. Further, Defendant Dunn failed to report a death while it is under investigation, a status which sometimes continues for years.

35. The number of prisoner-on-prisoner assaults within Alabama's Prisons for Men, including the Bullock Correctional Facility, consistently has been high in recent years as demonstrated by the DOJ.

36. According to the DOJ, from October 2018 to September 2019 (Fiscal Year 2019), approximately 278 prisoners in Alabama's Prisons for Men suffered serious injuries, defined as injuries requiring transport to outside hospitals, as the result of prisoner-on-prisoner assaults as detailed by the DOJ.

37. In October 2019, Defendant Dunn stopped publicly reporting separate numbers each month for serious injuries caused by prisoner-on-prisoner violence.

38. According to the DOJ and publicly available data, there were over 1,100 prisoner-on- prisoner assaults in Alabama's Prisons for Men from October 2019 through September 2020 (Fiscal Year 2020).

39. In the most recent Fiscal Year (FY 2020), each of Alabama's Prisons for Men has seen significant numbers of reported assaults as demonstrated by the DOJ.

40. During the first five months of Fiscal Year 2021, there have been 376 reported assaults and 453 reported fights across Alabama's Prisons for Men.

41. Defendants Dunn, Jones and Lamar, through their acts and omissions, have failed to provide adequate supervision of prisoners housed within Alabama's Prisons for Men, including the Bullock Correctional Facility to prevent such violence.

42. One factor contributing to the violence is overcrowding in Alabama's Prisons for Men. Alabama's Prisons for Men were designed to hold approximately 9,735 men. However, according to the February 2021 Monthly Statistical Report, ADOC reported that Alabama's Prisons for Men housed approximately 14,000 prisoners.

43. According to the DOJ, Alabama's Prisons for Men, with the exception of Holman, house a substantial number of men beyond their design capacity. For example, Staton had a 257% occupancy rate and Kilby had a 201% occupancy rate at the end of February 2021. Bibb, Bullock, Donaldson, Easterling, and Ventress all had occupancy rates over 140%. Even Holman had a 282% occupancy rate on its death row.

44. The overcrowding at Alabama's Prisons for Men will be made worse when restrictions on admission related to COVID-19 are eliminated. In February 2021, ADOC reported that there were thousands of prisoners at local county jails awaiting intake into ADOC custody, in part due to the COVID-19 restrictions.

45. Another factor contributing to the violence is the dangerously low level of security staffing. A recent court order confirmed Defendant Dunn continued to have fewer than half its staff positions filled. As of the third quarter of 2020, ADOC had filled 1,322 of 3,326 positions for correctional officers. The overall number of supervisors has

decreased. Seven of Alabama's Prisons for Men have total staff vacancy rates in excess of 50%, and all have at least 25% of staff positions vacant. Vacancy rates at some facilities are even higher. The Bullock Correctional Facility has a vacancy rate of 60.1%.

46. Defendant Dunn, through his acts and omissions, engaged in a pattern or practice that obscures the level of harm from prisoner violence in Alabama's Prisons for Men, including the Bullock Correctional Facility. For example, (a) Defendant Dunn did not consistently, reliably, or accurately classify the causes of deaths that occur within Alabama's Prisons for Men, including the Bullock Correctional Facility; (b) Defendant Dunn classified prisoners' deaths as occurring by "natural causes" when the death is caused by prisoner-on-prisoner violence; (c) Defendant Dunn did not have a centralized system to track or review prisoner mortalities within Alabama's Prisons for Men, nor did Defendant Dunn maintain a unified repository or database for prisoner autopsies to track and identify patterns in causes of death.

47. Defendants Dunn, Jones and Lamar, through their acts and omissions, failed to protect prisoners at the Bullock Correctional Facility from homicide even when Defendants Dunn, Jones and Lamar had advance warning that certain prisoners were in danger from violence at the hands of other prisoners.

48. Defendants Dunn, Jones and Lamar, through their acts and omissions, failed to adequately supervise prisoners in custody at the Bullock Correctional Facility properly, which resulted in a failure to prevent serious injuries to prisoners. Because of

the Defendants' failure to supervise prisoners, there is a delay in security staff discovering life-threatening injuries to prisoners.

49. Defendants Dunn, Jones and Lamar, through their acts and omissions, failed to screen entrants to the Bullock Correctional Facility for contraband adequately and fail to prevent the introduction of illegal contraband into the Bullock Correctional Facility as demonstrated by the DOJ. "Contraband" refers to prohibited materials that can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of Alabama's Prisons for Men, including drugs, cell phones, and weapons.

50. The failure to prevent the introduction of illegal contraband leads to prisoner-on-prisoner violence. For example, the use of illicit substances, including methamphetamines or Fentanyl and synthetic cannabinoids, is prevalent in Alabama's Prisons for Men. Prisoners using illicit substances often harm others or become indebted to other prisoners. The inability to pay drug debts leads to beatings, kidnappings, stabbings, sexual abuse, and homicides.

51. Defendants Dunn, Jones and Lamar' failure to prevent the introduction of illicit substances leads to deaths by overdose.

52. Defendants Dunn, Jones and Lamar, through their acts and omission, also failed to prevent the introduction of illicit cell phones within Alabama's Prisons for Men, including the Bullock Correctional Facility. The possession and use of cell phones are

widespread throughout Alabama's Prisons for Men and contributes to the high rate of violence in the prisons. For example, cell phones are used by prisoners to coordinate the introduction of illicit substances into Alabama's Prisons for Men, including the Bullock Correctional Facility, and for the extortion of prisoner family members by other prisoners.

53. Defendants Dunn, Jones and Lamar, through their acts and omissions, failed to control effectively the introduction, manufacture, and use of weapons within Alabama's Prisons for Men, including the Bullock Correctional Facility. Possession and use of weapons are widespread within Alabama's Prisons for Men, including the Bullock Correctional Facility. The large number of weapons contributes to the high rate of violence, sexual abuse, and death.

54. Defendants Dunn, Jones and Lamar, through their acts and omissions, failed to respond properly to prisoner and staff reports of threats and violence so that management can appropriately discipline assailants and avert future violence. For example, in February 2018, a prisoner was killed by another prisoner at Bullock—one day after the prisoner who was killed expressed concern for his safety to prison officials.

55. Defendants Dunn, Jones and Lamar, through their acts and omissions, discouraged victims from reporting incidents of violence or threats of violence including through their failure to establish a grievance system in Alabama's Prisons for Men, their retaliation against prisoners who report violence and threats of violence, and their

imposition of discipline against prisoners who report violence or refuse to name individuals they fear may harm them.

56. Defendants Dunn, Jones and Lamar, through their acts and omissions, failed to prevent prisoners from extorting other prisoners and their family members, resulting in serious physical injuries and sexual abuse and presenting a risk of serious harm to prisoners at Alabama's Prisons for Men, including the Bullock Correctional Facility. For example, prisoners have been "kidnapped" by other prisoners and forcibly held, against their will, for multiple days while prisoner-captors extorted the hostage-prisoner's family and friends.

57. Defendants Dunn, Jones and Lamar and their staff have failed to intervene when alerted to potential extortion.

58. Defendants Dunn, Jones and Lamar, through their acts and omissions, failed to implement effective classification and housing policies, thereby resulting in violence caused by commingling prisoners who should be kept separate.

59. Defendants Dunn, Jones and Lamar, through their acts and omissions, failed to prevent uncontrolled movement of prisoners, leading to prisoners roaming in unauthorized or unsupervised areas and leading to violence. There were over 1,100 reports of prisoners being in unauthorized locations across Alabama's Prisons for Men in ADOC's 2017 incident report database.

60. Defendants Dunn, Jones and Lamar, through their acts and omissions, failed to provide adequate programming, education, or work opportunities. The majority of prisoners receive no programming or employment. This idle time combined with lack of adequate supervision of prisoners results in increased opportunities to perpetuate violence.

61. The incidents summarized below are illustrative examples of the pervasive pattern of life-threatening violence within Alabama's Prisons for Men and are not a comprehensive list of all relevant violent incidents that have occurred within Alabama's Prisons for Men:

(a) in May 2018, a prisoner at Bibb reported that he had been held hostage in an open dormitory over the course of several days over a money debt and was severely beaten by several prisoners during that time;

(b) in October 2017, a prisoner at Bibb entered the health care unit bleeding from stab, bite, and scratch wounds. Because the prisoner declined to name the person who had assaulted him, he was disciplined for intentionally creating a security/safety/health hazard;

(c) in April 2017, a Bibb prisoner was stabbed multiple times by another prisoner while sleeping. His attacker stated that the victim owed him a drug debt, so he "got it in blood;"

(d) in April 2018, a Bullock prisoner, covered in blood, approached security staff and stated that he had been stabbed by several other prisoners. He had to be airlifted to an outside hospital for treatment;

(e) in September 2017, a prisoner at Draper who was high on Suboxone assaulted another prisoner with a lock tied to a string. While drugged, the attacker also was stabbed, had bleach poured on him, and was beaten with a broken mop handle;

(f) in February 2021, a prisoner at Easterling was stabbed multiple times by two other prisoners in the head, neck, and shoulders. The prisoner was airlifted to an outside hospital for treatment; in August 2020, a prisoner at Easterling was taken to an outside hospital with serious burn wounds when another prisoner microwaved a mixture of baby oil, shaving powder, and coffee granules and poured it on the victim's face and body while he was sleeping;

(g) in March 2018, a prisoner at Elmore reported that he was in fear for his life because he owed money to four prisoners who were threatening him. The reporting prisoner was ordered to provide a urine sample and disciplined for intentionally creating a security/safety/health hazard;

(h) in February 2017, a prisoner at Elmore died after being beaten to death by another prisoner over a failed drug transaction;

(i) in February 2018, a Fountain prisoner was stabbed ten times over his entire body by another prisoner before being discovered by an officer. He was airlifted to an

outside hospital. A search recovered a homemade weapon that was approximately nine inches long;

(j) in February 2018, a Holman officer noticed a prisoner walking toward the front gate of his open dormitory with blood on his clothes. He had been stabbed 22 times by two other prisoners, with wounds to his back and head, and had to be airlifted to an outside hospital;

(k) in April 2018, an officer at Kilby noticed a crowd of prisoners gathered in the back of an open dormitory. When the officer approached, he discovered a prisoner with a bleeding, partially detached ear. The injured prisoner had been fighting with another prisoner who tried to bite off his ear. The injured prisoner was ultimately taken to an outside hospital for treatment;

(l) in March 2018, a prisoner at Kilby approached an officer with visible burns on his body. The prisoner told the officer another prisoner had thrown shaving cream heated in a microwave on him; the shaving cream was hot enough to cause second degree chemical burns. The prisoner was taken to an outside emergency room;

(m) in December 2020, an inmate was stabbed multiple times by another prisoner in the early morning hours at Limestone and had to be transported to an outside hospital for treatment;

(n) in August 2020, four prisoners at Limestone were involved in a knife fight that resulted in three being transported to an outside hospital for treatment;

(o) in April 2018, at St. Clair, a captain was told that a prisoner feared for his safety because of debts he owed to gang members. The prisoner who made the report was disciplined for intentionally creating a security/safety/health hazard and placed in restricted housing for admitting to having accrued a debt;

(p) in February 2018, an officer at St. Clair noted a prisoner running down the hallway and stopped him. The prisoner turned and showed the officer that he had an eight-inch, metal homemade knife embedded in his head;

(q) in February 2018, a prisoner at St. Clair was repeatedly physically and sexually assaulted at night by his cell mate. He eventually reported that his cell mate had been extorting him to pay $1,000 and was forcing him into sex and requiring payment of four packs of tobacco each day until he satisfied the $1,000 debt;

(r) in January 2018, the mother of a prisoner at Ventress reported that she and her son were being extorted for money to pay off an alleged $600 debt to another prisoner. The prisoner's mother was texted photos of a prisoner's genitals from a cell phone. Through texts, the extorting prisoner threatened to chop her son into pieces and rape him if she did not send $800.

62. The pattern or practice of failing to protect prisoners from violence at the hands of other prisoners will continue.

63. Insufficient staffing in Alabama's Prisons for Men, including the Bullock Correctional Facility, leads to inadequate supervision, which in turn allows prisoner-on-prisoner violence and sexual abuse to occur.

64. Defendant Dunn, through his acts and omissions, discouraged reporting of prisoner-on-prisoner violence and sexual abuse.

65. Defendant Dunn, Jones, and Lamar, through their acts and omissions, failed to prevent prisoners from being violently abused by other prisoners in retaliation for reporting violence or abuse.

66. For example, in January 2018, a prisoner at Bullock Correctional Facility resorted to cutting his wrist after an attempted sexual assault and physical assault by another prisoner "because he feared being in population and needed to be placed in a single cell." He reported that two nights prior, two prisoners had attempted to rape him but were unable to penetrate him because he defecated during the assault. The prisoners then poured hot water on him, causing burn marks to his buttocks and the back of his head. ADOC placed the victim in segregation and allowed the perpetrators to remain in general population. The incident report notes that the perpetrators would receive "disciplinary actions for assault," and that no further action would be taken.

67. Defendants Dunn, Jones and Lamar also failed to provide safe and sanitary conditions for prisoners in Alabama's Prisons for Men, including the Bullock Correctional Facility.

68. Understaffing, coupled with the lack of adequate surveillance cameras, exacerbates the serious risk of death, physical violence, and sexual abuse at the hands of other prisoners in Alabama's Prisons for Men, including the Bullock Correctional Facility.

69. Understaffing, coupled with broken and defective locks, allows prisoners to leave secure areas, obtain contraband, and improperly associate with or assault other prisoners.

70. Overcrowding, coupled with the lack of adequate working toilet and shower fixtures, heightens tensions within Alabama's Prisons for Men, including the Bullock Correctional Facility, which results in prisoner-on- prisoner violence.

71. Defendants Dunn, Jones and Lamar, through their acts and omissions, allowed for significant physical plant-related issues in Alabama's Prisons for Men, including the Bullock Correctional Facility, that contribute to violence, including broken or defective locks, insufficient or nonfunctional surveillance cameras, and insufficient convex mirrors.

72. Defendants Dunn, Jones and Lamar were aware of their failure to protect prisoners in Alabama's Prisons for Men, including the Bullock Correctional Facility, from prisoner-on-prisoner violence, prisoner-on-prisoner sexual abuse, security staffs' excessive use of force, and unsafe and unsanitary conditions.

73. Defendants Dunn, Jones and Lamar have been aware of the dangerous conditions in Alabama's Prisons for Men, including the Bullock Correctional Facility, for many years,

74. Since the United States opened its investigation in October 2016, Alabama's Prisons for Men, including the Bullock Correctional Facility, have remained extremely overcrowded.

75. Alabama's Prisons for Men, including the Bullock Correctional Facility, are still critically and dangerously understaffed.

76. Since the United States released its findings report on April 2, 2019, notifying the State and Defendants Dunn, Jones and Lamar that they were violating the Eighth Amendment by failing to prevent prisoner-on-prisoner violence and sexual abuse, violence and sexual abuse have remained widespread. Injuries, deaths, and fighting are systemic problems in Alabama's Prisons for Men, including the Bullock Correctional Facility.

77. Since the United States released its findings report on July 23, 2020, notifying the State that it was violating the Eighth Amendment through a pattern of excessive force in Alabama's Prisons for Men, the pattern of excessive force has continued.

78. Despite being on notice of the dangerous and deficient conditions in Alabama's Prisons for Men, Defendants Dunn, Jones and Lamar failed or refused to eliminate the unconstitutional conditions.

## IV. FACTS OF LAWRENCE TURNER'S DEATH

79. The allegations of Paragraphs 11 through 78 are hereby re-alleged and incorporated by reference.

80. For approximately twenty-three (23) years, Lawrence Turner, deceased, (hereinafter referred to as "Mr. Turner") was incarcerated in many different State prisons throughout Alabama.

81. During this time, numerous mentally ill inmates were housed at the Bullock Correctional Facility.

82. In addition, during this time, the Bullock Correctional Facility was chronically understaffed, and mental-health services were deficient at the Bullock Correctional Facility.

83. Also, during this time and as stated above, Bullock Correctional Facility was substantially overcrowded; severely understaffed; inmates were routinely transferred between facilities, resulting in inadequate information and treatment at their new facility; mental-health counselors' caseloads were twice as high as what they should have been; ADOC's correctional staffing also fell short of required levels, often resulting in an inability to check on prisoners frequently enough to guarantee their safety.

84. Throughout the relevant period, Defendant Dunn considered, but failed to implement, any policy changes that would have provided adequate mental-health care, improved staffing, or crowding levels, or otherwise provided adequate safety and/or prevented the continued placement of inmates, including Lawrence Turner in substantial risk of serious harm.

85. At all relevant times, Defendants Dunn, Jones, and Lamar, in their personal capacities, were each aware of meaningful failures to protect inmates' mental health and protect inmates from serious harm. At all relevant times, Defendant Dunn was aware of the lack of any constant-watch procedure as a serious problem, and personally reviewed both suicide and serious incident reports resulting in inmate deaths.

86. At all relevant times, Defendants Dunn, Jones, and Lamar knew that mentally ill patients were integrated with other inmates at Bullock Correctional Facility, did not receive treatment, and caused a substantial risk of serious harm.

87. At all relevant times, Defendants Dunn, Jones, and Lamar each was aware that placing seriously mentally ill prisoners in a common area with other prisoners amounted to a denial of minimal care, and that this practice continued.

88. Despite their knowledge that these practices created a substantial risk of serious harm, Defendants Dunn, Jones, and Lamar failed to implement any corrective policies or practices, never ordered his staff or any Warden to take any concrete measures

to correct the substantial risk of serious harm caused by violent and/or mentally ill inmates.

89. Defendant Dunn made no effort to address the problem. Although Defendant Dunn apparently promised to implement a constant-watch procedure, demonstrating an understanding of its importance, Defendant Dunn failed to do so.

90. Defendants Dunn, Jones, and Lamar perpetuated policies that they knew fell far short of ADOC's constitutional obligations to inmates, including the protection from substantial risks of serious harm.

91. Defendants Dunn, Jones, and Lamar failed to take any action amounting to deliberate indifference.

92. At all relevant times, Defendants Dunn, Jones, and Lamar were entrusted with the proper operation and management of the Bullock Correctional Facility. These responsibilities included the protection of inmates, the prevention of prisoner-on-prisoner violence, the obligation to provide safe conditions of confinement, and the supervision and management of jail employees, including those employed at the Bullock Correctional Facility.

93. At all relevant times, Defendants Dunn, Jones, and Lamar and their agents, employees, agents, and/or officers, were acting pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendants Dunn, Jones, and Lamar.

94. At all relevant times, it was the duty of Defendants Dunn, Jones, and Lamar to refrain from subjecting others to a deprivation of their Constitutional rights, including Lawrence Turner, deceased.

95. At all relevant times, in breach of said duty, Defendants Dunn, Jones, and Lamar subjected decedent Lawrence Turner to deprivation of rights in violation of the privileges and immunities secured to Lawrence Turner by the Eighth Amendment to the United States Constitution by engaging in the following policies, practices, and customs:

a. Failing to identify prisoners, including Lawrence Turner, with a substantial risk of serious harm;

b. Failing to provide plans to prisoners with a substantial risk of serious harm, including Lawrence Turner;

c. Failing to identify risks of serious harm and failing to adequately provide adequate care or to address and/or illuminate such risks;

d. Placing seriously mentally ill prisoners with other inmates, including Lawrence Turner, resulting in substantial risks of serious harm.

96. Defendants Dunn, Jones, and Lamar, together with various other officials, had either actual or constructive knowledge of the deficient policies, practices and customs alleged above. Despite having knowledge of the above, Defendants Dunn, Jones and Lamar condoned, tolerated and through their own actions or inactions thereby ratified such policies.

97. At all relevant times, Defendants Dunn, Jones, and Lamar were aware of the substantial risks of serious harm to prisoners at the Bullock Correctional Facility, including Lawrence Turner, resulting from the aforementioned policies.

98. Defendants Dunn, Jones, and Lamar also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of decedent, Lawrence Turner, as well as its detrimental impact on the confidence the public has in the correctional body that serves it.

99. As a direct and proximate result of the Constitutional violations caused by each Defendant, Dunn Jones, and Lamar, the employees, agents and/or officers of ADOC and the Bullock Correctional Facility, and other policymakers, decedent Lawrence Turner was deprived of his liberty and suffered damages, including death.

100. As a direct of the Constitutional violations caused by Defendants Dunn, Jones, and Lamar, and the employees, agents and/or officers ADOC and the Bullock Correctional Facility, and other policymakers, decedent Lawrence Turner's heirs suffered personal and pecuniary losses.

101. It is well settled law that prison officials must "take reasonable measures to guarantee the safety of the inmates," and "[a] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if [the official] is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." See *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019); *Lane v. Philbin*, 835

F.3d 1302, 1307 (11th Cir. 2016). Hence a qualified immunity defense should fall short of protecting Defendants Dunn, Jones, and Lamar from liability in this case.

102. At the Bullock Correctional Facility, there existed a substantial risk of serious harm—and the violent conditions were both extreme and posed an unreasonable risk of serious injury to the inmates' future health or safety, including the future health and safety of Mr. Turner.

103. At the Bullock Correctional Facility, Defendants Dunn, Jones, and Lamar were deliberately indifferent to this unreasonable risk. Each named Defendant was aware of many facts from which the inference could be drawn, and did draw the inference, that a substantial risk of serious harm exists.

104. In addition, Defendants Dunn, Jones, and Lamar each responded to this known substantial risk in an unreasonable manner, in that Defendants Dunn, Jones and Lamar each knew of ways to reduce the risks and harm, but knowingly or recklessly declined to act. Moreover, each Defendant's failure to act reasonably directly resulted in Mr. Turner's serious injuries and death.

105. At the Bullock Correctional Facility, violence and terror among prisoners reigned, as serious inmate-on-inmate violence was the norm or something close to it.

106. In addition, at the Bullock Correctional Facility, there existed pervasive and continued understaffing and additional logistical issues rendering prison officials unable to address near-constant violence and tensions between prisoners and/or groups of

prisoners. This also included risks posed by individual prisoners or groups of prisoners due to many prisoners' mental illnesses; and included guards, with knowledge and/or consent, permitting repeated inmate-on-inmate threats and violence.

107. At the Bullock Correctional Facility, Defendants Dunn, Jones, and Lamar each possessed significant details about the constant threats of violence among the prisoners, including the specific dangerous inmate actions taken, and threats made, against Mr. Turner. This environment and information provided Defendants Dunn, Jones and Lamar with an understanding that prisoners, including Mr. Turner, suffered each day from a strong likelihood of injury or death. Defendants Dunn, Jones, and Lamar each had been placed on notice of the substantial risk of serious harm to Mr. Turner. This identified risk was substantial and not merely a possibility.

108. On or about January 1, 2021, Mr. Turner and other inmates at the Bullock Correctional Facility began providing specific information to officers at the Bullock Correctional Facility that serious deadly threats to Mr. Turner's life were being made by known violent and mentally ill inmates.

109. For months before his death, Mr. Turner and other inmates at the Bullock Correctional Facility repeatedly advised Bullock Correctional Facility officers on numerous occasions that serious deadly threats to Mr. Lawrence Turner's life were being made by known violent and mentally ill inmates.

110. This information was provided to Mr. Lawrence Turner's brother, Fred Turner, the Administrator/Plaintiff in this case, who also reported to Bullock Correctional Facility officers that Lawrence Turner, deceased, had been tortured by other inmates and guards.

111. With this information, Defendants Dunn, Jones, and Lamar were made aware and provided specific knowledge of Mr. Lawrence Turner's substantial risk of serious and/or deadly harm.

112. Mr. Lawrence Turner, deceased, Mr. Fred Turner, and other inmates not only identified to the Bullock Correctional Facility officers the inmates, by name, who were threatening a potential deadly attack against Mr. Turner, but effectively placed Defendants Dunn, Jones, and Lamar on notice that Mr. Lawrence Turner, deceased, faced a specific and substantial risk of serious and/or deadly harm.

113. Through the acts and omissions alleged in paragraphs 10 through 78, and the more specific acts and omission stated in paragraphs 79-112, Defendants Dunn, Jones and Lamar subjected Lawrence Turner, deceased, while in the Bullock Correctional Facility, to conditions of confinement that deprived him of his rights, privileges, and immunities secured and protected by the Eighth and Fourteenth Amendments to the Constitution of the United States, causing Mr. Turner, deceased, to suffer grievous harm and resulting death.

114. Through the acts and omissions alleged in paragraphs 10 through 78, and the more specific acts and omission stated in paragraphs 79-112, the Defendants Dunn, Jones and Lamar exhibited deliberate indifference to the safety of Lawrence Turner, deceased, as well as other prisoners located at Bullock Correctional Facility, in violation of the rights, privileges, or immunities of those prisoners as secured or protected by the Eighth and Fourteenth Amendments to the Constitution of the United States.

115. On or about April 2, 2021, due to the deliberate indifference of Defendants Dunn, Jones and Lamar, stated herein, Lawrence Turner, deceased, was physically attacked by the prisoners at the Bullock Correctional Facility, whose death threats and identities had been made known to Defendants Dunn, Jones and Lamar. This attack resulted in very serious injuries to Mr. Lawrence Turner, deceased.

116. After suffering the serious physical injures on or about April 2, 2021, Lawrence Turner, deceased, was transported to the Baptist South Hospital in Montgomery, Alabama.

117. On or about May 5, 2021, due to the deliberate indifference of Defendants Dunn, Jones and Lamar, Lawrence Turner, deceased, died due to the serious known risks and injuries caused by the physical attack of known violent prisoners at the Bullock Correctional Facility.

## V. CAUSES OF ACTION

## COUNT I

## VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS

118. The allegations of Paragraphs 11 through 117 are hereby re-alleged and incorporated by reference.

119. A causal connection existed between the actions of Defendants Dunn, Jones and Lamar, and the alleged constitutional deprivation. There existed a history of widespread abuse placing Defendants Dunn, Jones, and Lamar on notice of the need to correct the alleged deprivation, and Defendants Dunn, Jones and Lamar failed to do so. This further created a custom or policy resulting in each Defendant's deliberate indifference to the substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility. Defendants Dunn, Jones and Lamar were subjectively aware of this substantial risk of serious harm to prisoners, including Lawrence Turner, deceased.

120. With subjective knowledge of the substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility, Defendants Dunn, Jones and Lamar did not respond and/or did not reasonably respond to the risk. Defendants Dunn, Jones and Lamar reasonably knew, or should have known, that this custom or policy would result in a substantial risk of serious harm to inmates, including Lawrence Turner,

deceased, and acted or failed to act despite his or her knowledge of this substantial risk of serious harm.

121. Lawrence Turner, deceased, suffered a substantial risk of serious harm caused by many violent prisoners at the Bullock Correctional Facility. The violence of prisoners at the Bullock Correctional Facility was so extreme that it posed an unreasonable risk of serious damage to prisoner health or safety, including the health and safety of Lawrence Turner, deceased.

122. Defendants Dunn, Jones and Lamar were well aware of the actual substantial risk of serious harm to Lawrence Turner, deceased, at the Bullock Correctional Facility, and there existed a strong likelihood of prisoner injuries, including the serious injuries and death suffered by Lawrence Turner, deceased.

123. Defendants Dunn, Jones, and Lamar acted with deliberate indifference to this substantial risk in violation of the Eighth and Fourteenth Amendments, resulting in the deceased, Lawrence Turner's, injuries, and death.

124. This deliberate indifference by Defendants Dunn, Jones and Lamar to the actual and substantial risk of serious harm at the Bullock Correctional Facility was unwarranted, unlawful, and excessive, and violated the individual rights afforded Lawrence Turner, deceased, by the Eighth Amendment and Fourteenth Amendment. (See *Farmer v. Brennan*, 511 U.S. 825, 843 (1994), recently acknowledged, accepted, and

quoted by the Court in Memorandum Opinion and Order in *Head v. Hamm*, U.S.M.D. 2:20-cv-00132-WKW-KFP).

125. Defendants Dunn, Jones, and Lamar acted with a conscious disregard of the known consequences of their actions and/or omissions; and knew of, or should have known, and failed to prevent the deliberate indifference resulting in the serious injuries and death of Lawrence Turner, deceased.

126. As a direct and proximate result of the unlawful conduct by Defendants Dunn, Jones, and Lamar, Lawrence Turner, deceased, suffered actual physical and emotional injuries and death, and other damages and losses entitling Plaintiff to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering, loss of life, and emotional distress.

127. Plaintiff is further entitled to attorney's fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

128. In addition to compensatory damages, Plaintiff entitled to punitive damages against Defendants Dunn, Jones and Lamar, as each Defendant's actions were taken maliciously, willfully and with a reckless or wanton disregard of the constitutional rights of Lawrence Turner, deceased.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following relief:

a) Immediate equitable relief to depose necessary eyewitnesses to the actions alleged herein, currently incarcerated and in serious danger at the Bullock Correctional Facility;

b) Judgment declaring that Defendants Dunn, Jones, and Lamar violated the constitutional rights of Lawrence Turner, deceased, as provided by the Eighth Amendment and Fourteenth Amendment;

c) An order granting compensation from Defendants Dunn, Jones and Lamar for rights to which Lawrence Turner, deceased, would have been entitled, had he not been the victim of the civil rights violations;

(d) An award of compensatory damages from Defendants Dunn, Jones and Lamar, including but not limited to damages for personal injury, mental anguish, emotional distress, and medical expenses, to which Plaintiff may be entitled;

e) An award of punitive damages against Defendants Dunn, Jones and Lamar;

f) An award of reasonable attorney's fees as permitted by pursuant to 42 U.S.C. § 1988; and

g) An award of all court costs and fees, and such other necessary relief deemed appropriate.

## COUNT II

## WRONGFUL DEATH

129. The allegations of Paragraphs 11 through 128 are hereby re-alleged and incorporated by reference.

130. The Plaintiff asserts this claim pursuant to Ala. Code (1975) § 6-5-410.

131. A substantial risk of serious harm caused by violent prisoners existed at the Bullock Correctional Facility, and each Defendant, Dunn, Jones, and Lamar, was subjectively aware of this substantial risk of serious harm to prisoners, including Lawrence Turner, deceased.

132. With subjective knowledge of the substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility, Defendants Dunn, Jones and Lamar did not respond and/or did not reasonably respond to the risk.

133. Lawrence Turner, deceased, suffered a substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility. The violence of prisoners at the Bullock Correctional Facility was so extreme that it posed an unreasonable risk of serious damage to prisoner health or safety, including the health and safety of Lawrence Turner, deceased.

134. Each Defendant, Dunn, Jones, and Lamar, was well aware of the actual substantial risk of serious harm at the Bullock Correctional Facility, and that there existed

a strong likelihood of prisoner injuries, including the serious injuries suffered by Lawrence Turner, deceased.

135. Each Defendant, Dunn, Jones, and Lamar, acted willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, under a misinterpretation of the law in discharging his or her duties, and/or in disregard of the known consequences of his or her actions and/or omissions; and further knew of, or should have known, and failed to prevent the deliberate indifference resulting in the serious injuries and death of Lawrence Turner, deceased.

136. As a direct and proximate result of the unlawful conduct by each Defendant, Dunn, Jones, and Lamar, Lawrence Turner, deceased suffered actual physical and emotional injuries and death, and other damages and losses entitling Plaintiff to compensatory damages in amounts to be determined at trial. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, extraordinary pain and suffering, and emotional distress.

137. The acts and/or omissions by Defendants Dunn, Jones and Lamar, as stated herein, caused the wrongful death of Lawrence Turner, deceased, in violation of Ala. Code (1975) § 6-5-410.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following relief:

a) Judgment declaring that that Defendants Dunn, Jones, and Lamar committed unlawful acts and/or omissions as stated herein causing the wrongful death of Lawrence Turner, deceased;

b) An award of compensatory damages from Defendants Dunn, Jones, and Lamar, including but not limited to damages for personal injury, mental anguish, emotional distress, and medical expenses, to which Plaintiff may be entitled;

c) An award of punitive damages against Defendants Dunn, Jones, and Lamar;

e) An award of reasonable attorney's fees; and

f) An award of all court costs and fees, and such other necessary relief deemed appropriate.

## VI. JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

Respectfully submitted this 9th day of January 2023.

/s/ K. David Sawyer
K. David Sawyer (ASB-5793-R61 K)
MCPHILLIPS SHINBAUM, LLP
516 South Perry Street
Montgomery, AL 36104
T: (334) 356-4301
F: (334) 263-2321
kdsawyer64@outlook.com

**OF COUNSEL**
**MCPHILLIPS SHINBAUM, LLP**
516 S. Perry Street Montgomery, AL 36104
T: (334) 262-1911
F: (334) 263-2321
julianmcphillips@icloud.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of January 2023, I electronically filed a copy of the foregoing First Amended Complaint with the Clerk of the Court via CM/ECF which will notify the following counsel of record:

Steve Marshall,
Tara S. Hetzel
Laura E. Howell
State of Alabama
Office of Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Tara.Hetzel@AlabamaAG.gov
Laura.Howell@AlabamaAG.gov

Matthew Reeves
William Richard Lunsford
Ellie Boles Putman
Mary Landon Whatley
Maynard Cooper & Gale PC
655 Gallatin St.
Huntsville, AL 35801
T 256.562.1155
F 256.512.0119
mreeves@maynardcooper.com
blunsford@maynardcooper.com
eputman@maynardcooper.com
lwhatley@maynardcooper.com

/s/ K. David Sawyer
K. David Sawyer (ASB-5793-R61 K)