**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| FRED TURNER, Administrator for the Estate of Lawrence Turner, deceased, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO.: 2:22-CV-00624-MHT-KFP |
| JOHN HAMM, et al., | ) | |
| Defendants. | ) | |

# BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT OF DEFENDANTS PATRICE JONES AND DAVID LAMAR


Steve Marshall
*Attorney General*

Tara S. Hetzel
*Deputy Attorney General*
Laura E. Howell
*Assistant Attorney General*

State of Alabama
Office of Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Tara.Hetzel@AlabamaAG.gov
Laura.Howell@AlabamaAG.gov

***Counsel for Defendants Jones and Lamar***

**Table of Contents**

Introduction ........ 1

Legal Standard ........ 1

Facts ........ 2

A. The Parties ........ 2

ARGUMENT ........ 4

A. Plaintiff's Amended Complaint Should Be Dismissed Because It Remains an Impermissible Shotgun Pleading ........ 4

B. Plaintiff Fails to State a Claim for a Violation of Turner's Federal Constitutional Rights. ........ 8

1. Plaintiff fails to state a claim for deliberate indifference based on the failure to protect in Count One. ........ 8

i. Plaintiff fails to make plausible allegations that Defendants were deliberately indifferent to any specific threat posed to Turner. ........ 11

ii. Plaintiff fails to make plausible allegations that Jones and Lamar were deliberately indifferent to any generalized risk to Turner. ........ 12

2. Defendants Jones and Lamar are entitled to qualified immunity because Plaintiff fails to allege a violation of clearly established law. ........ 15

C. Plaintiff Fails to State a Claim of Wrongful Death Against the Defendants for the Same Reasons He Fails to State a Constitutional Claim Against Them, and Because Defendants Jones and Lamar are Entitled to State-agent Immunity. ........ 19

Conclusion ........ 23

## Introduction

Plaintiff, as administrator for the estate of Lawrence Turner, brought suit alleging that Turner's death was a result of the conditions of overcrowding, understaffing, and violence at the Alabama Department of Corrections' ("ADOC") Bullock Correctional Facility. *See* doc. 1. Defendants Jones and Lamar moved to dismiss Plaintiff's complaint on grounds that it was a shotgun pleading, failed to state a claim against either of them, or in the alternative, because they were both entitled to qualified immunity on Plaintiff's claims. Plaintiff subsequently amended his complaint. *See* doc. 24.

With respect to Defendants Jones and Lamar, Plaintiff's Amended Complaint remains deficient in the same ways as his initial complaint. First, the Amended Complaint remains a shotgun pleading that fails to meet the requirements of Fed. R. Civ. P. 8(a) and is due to be dismissed for that reason alone. Plaintiff's pleading makes collective allegations against the three named defendants and continues to attempt to premise liability for alleged systemic problems in Alabama's prisons against Defendants Jones and Lamar, who lack authority or control over the alleged deficiencies that resulted in Turner's death.

But even if Plaintiff's Amended Complaint was not due to be dismissed on shotgun pleading grounds, he still fails to state a federal claim for deliberate indifference against Defendants Jones and Lamar. Plaintiff fails to allege acts or omissions of deliberate indifference against Defendants on an individual basis as required to overcome their entitlement to qualified immunity. All claims against the above-named Defendants should be dismissed.

## Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." *Id.* (citing *Twombly*, 550 U.S. at 555–57). On a motion to dismiss, a court accepts the Plaintiffs' factual allegations as true. *Id.* at 678. "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**Facts**

**A. The Parties**

Fred Turner ("Plaintiff") is the brother and representative of Lawrence Turner ("Turner"), who was incarcerated at Bullock Correctional Facility ("Bullock"). (Doc. 24 ¶¶ 1, 6, & 97). At the time of Turner's death, Defendant Patrice Jones ("Jones") was a Correctional Warden at Bullock. (*id.* ¶ 8), and Defendant David Lamar ("Lamar")[1] was also employed as a Correctional Warden at Bullock (*id.* ¶ 9).

**B. Factual Allegations**

On or around May 5, 2021, Turner died of injuries caused by the physical attack of other inmates at Bullock. (Doc. 24 ¶ 117).

**1. The Stabbing Incident**

On or about January 1, 2021, Turner and other inmates at Bullock allegedly began to provide information to the Bullock correctional officers about the serious deadly threats to Turner's life, which were being made by violent and mentally ill inmates. (Doc. 24 ¶ 109). For months before Turner's death, Turner and unspecified other inmates informed the correctional

[1] Jones and Lamar will be collectively known as Defendants.

officers of these threats. (*Id.* ¶ 109). This information was also passed on to Plaintiff, who was also told that Turner had been tortured by other inmates and correctional officers. (*Id.* ¶ 110). Plaintiff claims that Jones and Lamar were aware of the identities of the inmates and correctional officers who were threatening Turner's life. (*Id.* ¶ 112).

On or about April 2, 2021, Turner was attacked by inmates at Bullock. (*Id.* ¶ 115). Turner sustained very serious injuries. (*Id.*). Turner was transported that same day from Bullock to Baptist South Hospital in Montgomery, Alabama. (*Id.* ¶ 116). Turner succumbed to his injuries on May 5, 2021. (*Id.* ¶ 117).

**2. Bullock's Alleged Institutional Failures**

Plaintiff claims that Defendants disregarded known risks to Turner's security by housing him in an understaffed, overcrowded facility. (Doc. 24 ¶ 83). Plaintiff further claims that the mental health services were deficient at Bullock. (*Id.* ¶ 82). Bullock is a Security Level IV (medium security) facility in Union Springs, Alabama. (*Id.* ¶ 19). The design capacity for Bullock is approximately 919 inmates. (*Id.*). Bullock "houses a substantial number of men beyond its design capacity," specifically Bullock had an occupancy rate of over 140%. (*Id.* ¶ 43).

Plaintiff alleges that prisoners at Bullock "endure[d] a substantial risk of serious harm, including death, physical violence, and sexual abuse at the hands of other prisoners." (Doc. 24 ¶ 14). Plaintiff claims that the Defendants were violating the Eighth Amendment rights of the inmates assigned to ADOC prisons "by failing to protect prisoners from physical harm and sexual abuse at the hands of other prisoners and by failing to provide safe conditions." (*Id.* ¶ 22). Plaintiff claims a pattern of violence within the ADOC that is pervasive and systemic. (*Id.* ¶ 26).

While most of Plaintiff's Complaint relies on information concerning other ADOC prisons, Plaintiff does allege a limited number of Bullock-specific statistics. Plaintiff alleges that an inmate

was beaten to death by another inmate at Bullock in June 2020. (Doc. 24 ¶ 30). In February 2018 at Bullock, another inmate was killed by a fellow inmate one day after voicing concerns for his safety to correctional staff. (*Id*. ¶ 54). Plaintiff claims that in April 2018, an inmate at Bullock who was covered in blood approached correctional staff and stated he had been stabbed by other inmates. (*Id*. ¶ 61(d)). The inmate was airlifted to a free-world hospital for medical treatment. (*Id*.). In January 2018, an inmate resorted to self-harm after an attempted sexual and physical assault by other inmates. (*Id*. ¶ 66). The inmate reported that because the assailants failed to penetrate him during the assault, they poured hot water on him, causing burns. (*Id*.).

Plaintiff also alleges understaffing of the security staff at Bullock. In fact, Plaintiff alleges that Bullock has a staff vacancy rate of 60.1%. (*Id*. ¶ 45).

Plaintiff alleges that Defendants Dunn, Jones, and Lamar were notified of these problems in an April 2019 report, and again in a July 2020 report, released to ADOC by the United States. (*Id.* ¶ 12). But the findings in the United States's reports involved men's prisons in the State generally, rather than just Bullock. (*Id.* ¶¶ 14 & 17). Most significantly, the report itself expressly states "[t]he Department does not serve as a tribunal authorized to make factual findings and legal conclusions binding on, or admissible in, any court, and nothing in this Notice should be construed as such." *See* U.S. Dep't of Just., Civil Rights Div., *Investigation of Alabama's State Prisons for Men*, p. 1, Jul. 23, 2020, available at https://www.justice.gov/crt/case-document/file/1297031/download.

## ARGUMENT

### A. Plaintiff's Amended Complaint Should Be Dismissed Because It Remains an Impermissible Shotgun Pleading.

Plaintiff's Amended Complaint remains in all critical aspects an impermissible shotgun pleading that fails to give Defendants Jones and Lamar adequate notice of the allegations and

claims asserted against them. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that violates the "basic requirements" of this rule constitutes a shotgun pleading. *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020). A shotgun pleading that fails to meet the "short and plain statement" requirement of Rule 8(a)(2) is one in which "it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so." *Id.* "It is not the proper function of courts in this Circuit to parse out such incomprehensible allegations." *Id.* When a defendant is presented with a shotgun complaint, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is an appropriate response. *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126–27 (11th Cir. 2014).

The Eleventh Circuit has divided shotgun complaints into "four rough types or categories." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.*at 1322. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.*at 1322-23. The fourth type of shotgun complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. Plaintiff's Amended Complaint fares no better than its predecessor in avoiding the pitfalls of shotgun pleading, and remains a shotgun pleading of the first, second, and fourth varieties.

First, the Amended Complaint commits the first type of shotgun pleading error by having each count reincorporate and adopt the previous paragraphs. *See* doc. 24 ¶¶ 118 & 129. Thus, each count carries all the information that comes before the next count, including every factual allegation made in the entire document. This is more problematic with the Second Count since it brings a state-law claim (wrongful death), while the paragraph incorporating "all that came before," *Weiland* at 1321, includes within its ambit all of the allegations made as part of Count One, which asserts a federal claim. *See* doc. 24 ¶ 129 (purporting to reallege and incorporate by reference paragraphs 11 through 128).

The Amended Complaint is also a shotgun pleading of the second type that repeatedly asserts conclusory and immaterial facts not related to the causes of action asserted in this case. In his pleading, Plaintiff indiscriminately asserts information concerning conditions at Bullock and every other correctional institution within the ADOC without delineating which allegations he intends to support the causes of action asserted against Defendants Jones and Lamar, who are Correctional Wardens at Bullock, and so at most are only responsible for conditions at that specific facility. (*See*, *e.g.*, doc. 24 ¶¶ 42-43 (describing overcrowding in numerous ADOC facilities) & 61 (citing "illustrative examples" of violence within various ADOC facilities)). Moreover, most of Plaintiff's alleged facts read like a parade of horribles without any clear link to the particular harm Plaintiff claims that Lawrence Turner suffered at Bullock prior to, or in conjunction with, his death. *See generally* doc. 24 ¶¶ 61(e)-61(r) (alleging incidents that took place at facilities other than Bullock); ¶¶ 21-26 (allegations concerning DOJ's investigation into ADOC facilities generally).

Finally, the Amended Complaint is still a shotgun pleading of the fourth variety specified in *Weiland* in that it asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. Rather than "specifying which of

the defendants are responsible for which acts or omissions," *Weiland*, 792 F.3d at 1323, most of the alleged factual allegations in paragraphs 11 through 117 of the Amended Complaint are asserted against "Defendants Dunn, Jones and Lamar" jointly, without further specification of who was responsible for what, and Count One asserts identical breaches of duty for all three Defendants even though Defendants Jones and Lamar, as Correctional Wardens, held very different responsibilities within ADOC from Defendant Dunn, as Commissioner of ADOC. *See generally* doc. 24 ¶¶ 119-128.

Count Two likewise confusingly remains asserted jointly against all three Defendants, without any specification of who did what. Plaintiff claims generically that "[e]ach Defendant, Dunn, Jones, and Lamar, acted willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, under a misinterpretation of the law in discharging his or duties . . . ," doc. 24 ¶ 135, without "specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 972 F.3d at 1323. In fact, although Plaintiff's Amended Complaint does at least acknowledge the names of the three defendants in its factual allegations, *no* allegation in either count attributes any particular action to an individual defendant, or even by a particular title (*i.e.*, by differentiating a Correctional Warden from the Commissioner). *See* doc. 24 ¶¶ 118-128 (Count One), ¶¶ 129-137 (Count Two).

As a result of Plaintiff's "type four" shotgun pleading violations, the Amended Complaint "fail[s] . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Plaintiff's shotgun pleading is especially problematic given that he has asserted Eighth Amendment claims for deliberate indifference against the Defendants collectively. These claims require factual allegations of how each individual Defendant was subjectively aware of a serious risk and unreasonably failed to respond

to the known risk of harm. It is therefore impossible for individual Defendants to respond to collective allegations of awareness or failure to respond to a known risk of harm, nor is it possible for this Court to conduct the required Eighth Amendment qualified immunity analysis in the face of a shotgun pleading. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (stating rules of pleading are "also written for the benefit of the court, which must be able to determine which facts support which claims, whether the plaintiff has stated any claims upon which relief can be granted, and whether evidence introduced at trial is relevant.") (internal quotations and citation omitted). *See also Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) ("Because § 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation, each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions.") (internal quotation and citation omitted).

For all of these reasons, Plaintiff's failure to amend his complaint in such a way as to avoid shotgun pleading, particularly with the benefit of reviewing the arguments articulated in the Defendants' initial motion to dismiss and brief in support (*see* docs. 18 & 19), indicates that the Amended Complaint should be dismissed. *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds.").

**B. Plaintiff Fails to State a Claim for a Violation of Turner's Federal Constitutional Rights.**

**1. Plaintiff fails to state a claim for deliberate indifference based on the failure to protect in Count One.**

Plaintiff alleges in Count One that "Defendants Dunn, Jones, and Lamar" violated Turner's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment by failing

to protect him from the deadly assault by another inmate. *See generally* doc. 24 ¶¶ 118-128. Whether because of the ongoing shotgun pleading violations in Plaintiff's Amended Complaint or his failure to plead deliberate indifference with any particularity as to any individual defendant, Plaintiff's deliberate indifference claim in Count One is due to be dismissed.

The Eighth Amendment's prohibition on cruel and unusual punishment "requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Cox v. Nobles*, 15 F.4th 1350, 1357 (11th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. 825, 834 (1994)). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 756 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc)).

"When a plaintiff invokes this principle in a lawsuit against prison officials, we often refer to the plaintiff's claims as 'failure-to-protect' claims." *Cox*, 15 F.4th at 1357. "To succeed on a failure-to-protect claim, a plaintiff must satisfy three elements." *Id.* at 1358. The plaintiff must show (1) "that she was 'incarcerated under conditions posing a substantial risk of serious harm,'"; (2) "that 'the 'prison official [had] a sufficiently culpable state of mind,' amounting to 'deliberate indifference,'"; and (3) "the plaintiff must demonstrate causation—that the constitutional violation caused her injuries." *Id.* (quoting *Farmer*, 511 U.S. at 834).

The first element—whether conditions pose a substantial risk of serious harm—is "assessed objectively and requires the plaintiff to show 'conditions that were extreme and posed an unreasonable risk of serious injury to his future health and safety.'" *Marbury v. Warden*, 936

F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016)). The second element—deliberate indifference—exists "when a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Cox*, 15 F.4th at 1358 (quoting *Farmer*, 511 U.S. at 837). "Deliberate indifference has two components: one subjective and one objective." *Cox*, 15 F.4th at 1358 (quoting *Mosley v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020)). "A prisoner must establish 'both that [1] the defendant actually (subjectively) knew that [the prisoner] faced a substantial risk of serious harm and [2] that the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner.'" *Id.* On the subjective component, allegations establishing constructive knowledge are not enough, but rather "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. On the objective component, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As in the *Marbury* case, Plaintiff's failure-to-protect claims against Defendants Jones and Lamar divide into two distinct types based on the nature of the risk alleged. *See Marbury*, 936 F.3d at 1233-38. First, Plaintiff alleges that the collective "Defendants Dunn, Jones and Lamar" "were well aware of the actual substantial risk of serious harm to Lawrence Turner, deceased, at the Bullock Correctional Facility, and there existed a strong likelihood of prisoner injuries, including the serious injuries and death suffered by Lawrence Turner." Doc. 24 ¶ 122. Second, Plaintiff alleges "Defendants Dunn, Jones and Lamar" knew of a generalized risk of inmate-on-inmate violence at Bullock. *Id.* at ¶¶ 124-125. Plaintiff fails to state a claim under both theories.

**i. Plaintiff fails to make plausible allegations that Defendants were deliberately indifferent to any specific threat posed to Turner.**

First, Plaintiff's Amended Complaint continues to fail to plead the second and third elements of a deliberate indifference claim based on a specific threat to Turner. Plaintiff alleges no *facts* to show that Defendants Jones and Lamar had any subjective knowledge that Plaintiff would be harmed while assigned to Bullock. This is nowhere near the allegation of "subjective recklessness as used in the criminal law" required to allege deliberate indifference. *Farmer*, 511 U.S. at 839. Nor does Plaintiff allege facts to show Jones and Lamar were aware of such a threat *and* failed to take steps to prevent the harm. While Turner was killed several months after he supposedly informed unnamed and unspecified correctional staff that he had been threatened, doc. 24 ¶ 112, "[a] resulting harm . . . cannot alone establish a culpable state of mind." *Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020).

And Plaintiff has not articulated any facts establishing that Jones and Lamar specifically had knowledge of the threats made against Turner. "[A]n official's failure to alleviate a significant risk that he *should have* perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838 (emphasis added). *See also Cox*, 15 F.4th at 1358-59 (holding the allegation that Plaintiff "filed a PREA complaint" before she was sexually assaulted without specifically alleging the contents of what the PREA complaint communicated failed to allege the subjective component necessary to plead deliberate indifference claim). The generalized statement that "Turner and other inmates at the Bullock Correctional Facility began providing specific information to officers at the [facility] that serious deadly threats to Mr. Turner's life were being made by [other] inmates," doc. 24 ¶ 108, is insufficient to state a claim, and the bare allegation that Jones and Lamar "knew or should have known" about the threats has been held insufficient to state a claim for deliberate indifference

because it "merely recite[s] an element of a claim without providing the facts from which one could draw such a conclusion." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). Plaintiff's generalized allegations in the Amended Complaint remain far less specific than the inmate's statements in *Marbury*, a case in which the court held the defendant lacked subjective knowledge of a serious risk. *See Marbury*, 936 F.3d at 1238 (holding no subjective knowledge of risk where a particular officer "was aware of the potential for inmate-on-inmate violence at the prison, Marbury told her that another inmate was looking to harm him, and she responded by laughing at Marbury and telling him to get a knife because he had a 'problem.'"). Thus, Plaintiff's deliberate indifference claim based on a specific threat fails to state a claim against Jones and Lamar.

**ii. Plaintiff fails to make plausible allegations that Jones and Lamar were deliberately indifferent to any generalized risk to Turner.**

Plaintiff appears to allege in the alternative that the first element of his claim, a substantial risk of serious harm, is based on the generalized risk of inmate-on-inmate violence at Bullock rather than a specific threat regarding the death of Turner. *See*, *e.g.*, doc. 24 ¶¶ 105-106. But Plaintiff fails to allege facts that establish a general threat of violence, and he fails to allege facts demonstrating Jones or Lamar were deliberately indifferent to any general threat of violence. As a result, Plaintiff's alternative theory of deliberate indifference based on the generalized risk of inmate-on-inmate violence at Bullock is also due to be dismissed.

First, Plaintiff fails to allege sufficient facts to allege a substantial risk of serious harm based on the generalized risk of violence, and so his claim fails on the first element of deliberate indifference. "While 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, . . . confinement in a prison where violence and terror reign is actionable.'" *Marbury*, 936 F.3d at 1234 (quoting *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005)). "To establish deliberate indifference based on

a generalized risk, the plaintiff must show 'that serious inmate-on-inmate violence was the norm or something close to it.'" *Id.* But even under this standard, Plaintiff fails to plead "that [Turner] was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm." *Id.* at 1235.

Plaintiff's *factual* allegations of a general threat of violence fall far short when applying "the Supreme Court's 'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" *Franklin*, 738 F.3d at 1251. Most of Plaintiff's allegations against Jones and Lamar consist of conclusory legal allegations that must be disregarded. *See, e.g.*, doc. 24 ¶¶ 11-78, 81-83, 85-101, 104-105. As to facts, Plaintiff alleges just two about Bullock specifically: (1) Bullock's occupancy rate is currently over 140%, *id.* ¶ 43, and (2) Bullock was operating with a staff vacancy rate of 60.1 percent, *id.* ¶ 45. Plaintiff offers no statistical data concerning generalized violence at Bullock itself, relying entirely on data for "Alabama's Prisons for Men" generally. *See*, *e.g.*, *id.* ¶¶ 27 & 40. At best, Plaintiff alleges three other deaths that took place at Bullock over the course of the last five years. *See id.* ¶ 30 (June 2020), 54 (February 2018), 61(d) (April 2018). This is insufficient to state a claim based on a generalized risk of violence: the Eleventh Circuit has held that there was no substantial risk of serious harm based a generalized risk of violence in circumstances where a higher number of incidents of violence was reported. *See Marbury*, 936 F.3d at 1234 (holding plaintiff's testimony of witnessing fifteen stabbings over the course of six years insufficient to establish a substantial risk of serious harm); *Harrison*, 746 F.3d at 1300 (finding 33 incidents involving weapons at an institution housing 830 to 900 inmates was "hardly sufficient to demonstrate that Holman was a prison where violence and terror reign."); *Purcell*, 400 F.3d at 1322; *id.* at 1322 n.21 (holding that

in jail housing over 100 inmates two or three serious fights over a span of nine months "is insufficient to show that serious inmate-on-inmate violence was the norm or something close to it"). Plaintiff's allegations here concern a prison with a large inmate population and his factual allegations as to the number of homicides over an extended period are demonstrably inaccurate and thus insufficient to plausibly allege a generalized threat under binding precedent. Plaintiff's deliberate indifference claim based on the generalized risk of violence fails on the first element.

Second, even if Plaintiff's Amended Complaint had alleged a substantial risk of serious harm, Plaintiff makes no factual allegations whatsoever that Jones or Lamar were deliberately indifferent to any generalized risk of violence. "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly declined to act or if he knew of ways to reduce the harm but recklessly declined to act." *Cox*, 15 F.4th at 1360 (quoting *Rodriguez v. Sec'y for Dep't of Corrs*., 508 F.3d 611, 620 (11th Cir. 2007)). Plaintiff does not allege in any non-conclusory manner the ways in which Jones and Lamar could have reduced the harm but failed to do so. Even at the pleading stage, it is Plaintiff's burden to allege facts showing Defendants Jones and Lamar were aware of steps they *could have taken* and failed to do so. *See Cox*, 15 F.4th at 1361 (stating "that the amended complaint in this case fails to provide any context from which we can say that Harris's actions were objectively unreasonable.").

Plaintiff's repeated references to Defendants Jones and Lamar "fail[ing] to provide adequate supervision" of inmates to prevent violence, doc. 24 ¶ 41, are as conclusory as those held insufficient at the pleading stage in *Franklin v. Curry*. *See Franklin*, 768 F.3d at 1251 ("Franklin states that Sheriff Curry 'failed to promulgate, to adopt, to implement or to enforce policies, rules or regulations to safeguard female inmates,' but she does not describe any of the policies that were in place, the sort of policies that should have been in place, or how those policies could have

prevented Gay's harassment."). Plaintiff's allegations that Defendants Jones and Lamar could have prevented the assault on Turner if they had implemented unspecified policies are insufficient to allege deliberate indifference to a generalized risk. Otherwise, "the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not." *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013) (citing *Farmer*, 511 U.S. at 838). Plaintiff thus fails to allege the second element of deliberate indifference, *i.e.*, that Defendants Jones and Lamar knew of ways to reduce harm but failed to do so. Since Plaintiff fails to allege the first and second elements of deliberate indifference based on a generalized risk of violence, even an alternative theory of deliberate indifference in Count One fails to state a claim.

**2. Defendants Jones and Lamar are entitled to qualified immunity because Plaintiff fails to allege a violation of clearly established law.**

Defendants Jones and Lamar are also entitled to qualified immunity on Plaintiff's claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To invoke qualified immunity, a government official must have been acting within the scope of his "discretionary authority" when the allegedly wrongful acts occurred. *Grider v. City of Auburn*, 618 F.3d 1240, 1254 n.19 (11th Cir. 2010). The burden then shifts to the plaintiff to show that the official's conduct (1) violated federal law (2) that was clearly established at the relevant time. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). This "two-pronged analysis may be done in whatever order is . . . most appropriate for the case." *Grider*, 618 F.3d at 1254 (citing *Pearson*, 555 U.S. at 236).

"A government official acts within her discretionary authority if the actions were (1) undertaken pursuant to the performance of [her] duties and (2) within the scope of [her] authority." *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (alterations in original). "[T]o pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Here, case law clearly establishes that Jones and Lamar were acting within their discretionary authority in supervising inmates as prison wardens. *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

Because Defendants were acting within the scope of their discretionary authority, Plaintiff must show that Defendants (1) "violated a constitutional right" and that (2) "the violated right was clearly established." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation omitted). The Court can decide these two elements in any order; a plaintiff's failure to establish either is enough to grant qualified immunity. *Pearson*, 555 U.S. at 242. "Because § 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation, *each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions*." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (internal quotation and citation omitted) (emphasis added).

First, Defendants Jones and Lamar are entitled to qualified immunity under the first prong because Plaintiff's Amended Complaint still fails to allege a violation of federal law against either of them for the reasons set out in Section B(1) above. *See supra* at 8-14.

Second, Defendants are entitled to qualified immunity because Plaintiff also fails to carry his burden under the second prong to allege a violation of a clearly established right. A plaintiff

can show that a right is clearly established in three ways. *See Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013). First, a plaintiff can "produce a materially similar case decided by the Supreme Court, this Court, or the highest court of the relevant state." *Id.* (citation omitted). Second, a plaintiff can "point to a broader, clearly established principle [that] should control the novel facts" of the situation. *Id.* (citation and internal quotation marks omitted). Or third, a plaintiff can show that the case is one of "obvious clarity" in that the federal constitutional provision is "specific enough to establish clearly the law applicable to particular conduct and circumstances . . . even in the *total absence of case law*." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002).

Plaintiff fails to point to clearly established law under the second and third methods, which are "generally known as 'obvious clarity' cases." *See Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017) ("Cases do not often arise under the second and third methods."). Violations of this kind occur "where the words of the federal statute or constitutional provision at issue are so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful, or where the case law that does exist is so clear and broad (and not tied to particularized facts) that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* (internal quotation and citation omitted).

Unlike an "obvious clarity" case, Plaintiff's allegations of deliberate indifference are fact-intensive and enumerate a variety of alleged failures to maintain security at Bullock that allegedly led to Turner's death. But Plaintiff does not allege Defendants Jones and Lamar knew of an imminent assault on Turner and simply stood by and did nothing. Rather, Plaintiff alleges in conclusory fashion that they could have done more in supervising inmates at the prison. This is therefore not an "obvious clarity" case.

Plaintiff thus must proceed under the first method for clearly establishing law, as is generally the norm. Under this method, Plaintiff must "show that a materially similar case has already been decided." *Waldron v. Spicher*, 954 F.3d 1297, 1304 (11th Cir. 2020). The similar case must consist of "binding precedent tied to particularized facts in a materially similar case" from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Supreme Court of Alabama. *Id.* at 1304-05. "It is not enough that the rule is suggested by then-existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply," since "[o]therwise, the rule is not one that every reasonable official would know." *Id.*

Here, the materially similar cases are favorable to *Defendants* and demonstrate their entitlement to qualified immunity. That is, the cases regarding generalized threats of violence show Defendants were not on notice that their alleged conduct violated Plaintiff's rights. *See Marbury*, 936 F.3d at 1233-35; *Harrison*, 746 F.3d at 1299-1302; *Purcell*, 400 F.3d at 1320-24. In addition, cases regarding deliberate indifference at the pleading stage show that Plaintiff has failed to plead sufficient facts to overcome Defendants' entitlement to qualified immunity. *See Cox*, 15 F.4th at 1358-61 ("none of the allegations in the amended compalint indicated that [the defendant] was aware of any danger facing [plaintiff] before the assault"); *Franklin*, 738 F.3d at 1250-52. *See also* Section B(1), *supra* at 8-14. Plaintiff has failed to allege any facts to show Defendant Jones or Lamar had notice of a specific threat to Turner, much less a materially similar case establishing that they should have been aware of such a threat based on the allegations made in Plaintiff's Amended Complaint. As it is Plaintiff's burden to allege a violation of clearly established law once

Defendants establish their initial entitlement to qualified immunity, Defendants reserve the rest of their arguments on qualified immunity for reply.

**C. Plaintiff Fails to State a Claim of Wrongful Death Against the Defendants for the Same Reasons He Fails to State a Constitutional Claim Against Them, and Because Defendants Jones and Lamar are Entitled to State-agent Immunity.**

With respect to Plaintiff's State-law claim for wrongful death (Count II), Defendants Jones and Lamar are entitled to State-agent immunity pursuant to the standard set out in *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000). Moreover, to the extent Plaintiff's Amended Complaint persists in its attempts to preemptively assert that one of the exceptions to State-agent immunity applies (i.e., that "each named Defendant" acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority," doc. 24 ¶¶ 135), such allegations are not entitled to the presumption of truth on a motion to dismiss unless they are backed up by factual allegations supporting those conclusions. *See generally Ex parte Gilland*, 274 So. 3d 976, 985 n.3 (Ala. 2018) ("Although [courts] are required to accept [Plaintiff's] factual allegations as true at this stage of the proceedings, we are not required to accept h[is] conclusory allegations that [a defendant] acted willfully, maliciously fraudulently, or in bad faith. Rather, to survive [the defendant]'s motion to dismiss, [Plaintiff] was required to plead facts to support those conclusory allegations."). Plaintiff has not alleged any such facts with respect to either Defendant Jones or Defendant Lamar, and so his state-law claims against them should be dismissed on their showing of their entitlement to State-agent immunity.

"State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in exercising their work responsibilities." *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002). In *Ex parte Cranman*, the Alabama Supreme Court summarized the general scope of State-agent immunity as follows:

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> (1) formulating plans, policies, or designs; or
>
> (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>
> (a) making administrative adjudications;
>
> (b) allocating resources;
>
> (c) negotiating contracts;
>
> (d) hiring, firing, transferring, assigning, or supervising personnel; or
>
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
>
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
>
> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity . . . when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).

"In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006) (internal citations omitted).

Here, in performing their roles as Correctional Wardens at Bullock, Jones and Lamar would have been carrying out duties within the scope of the categories set out in *Cranman*: "employees of the [A]DOC are entitled to State-agent immunity when in conducting the activities made the

basis of the action they were exercising 'judgment in the administration' of the [A]DOC." *Ex parte Ruffin*, 160 So. 3d 750, 753 (Ala. 2014) (quoting *Carpenter v. Tillman*, 948 So. 2d 536, 538 (Ala. 2006)).

But, as noted above, Plaintiff's Amended Complaint remains devoid of allegations of any particular actions Jones or Lamar took that "caused the wrongful death of Lawrence Turner, deceased." Doc. 24 ¶ 137. The only mention of any actions or duties specifically undertaken by Jones or Lamar (rather than in collection with Defendant Dunn, *see*, *e.g.*, doc. 24 ¶¶ 47-49, 59) are in the two paragraphs naming them as defendants, both of which assert that their "responsibilities include, but are not limited to, the protection of inmates, the prevention of prisoner-on-prisoner violence, the obligation to provide safe conditions of confinement, and the supervision and management of jail employees," doc. 24 ¶¶ 8 & 9. Even without any further elaboration from Plaintiff about the duties at issue here, these are plainly within the scope of *Cranman* categories (2) and (3); namely, "exercising [] judgment in the administration of a department or agency of government, including . . . (b) allocating resources; . . . [and] assigning[] or supervising personnel" and "(3) discharging duties imposed on a department or agency by statute, rule, or regulations." *Ex parte Cranman*, 792 So. 2d at 405.

Similarly, "Categories (3) and (4) of [*Cranman*'s] restatement are clearly broad enough to contemplate the *confinement of prisoners*…the *Cranman* categories include the guarding of a [] jail." *Howard v. City of Atmore*, 887 So. 2d 201, 206 (Ala. 2003) (emphasis in original). As best as can be understood from the Amended Complaint's allegations, then, Jones' and Lamar's actions at issue in this case arose from functions entitling them to State-agent immunity under *Cranman*, and the burden is on Plaintiff to show that one of the exceptions to State-agent immunity applies.

However, Plaintiff's Amended Complaint continues to fail to allege any *facts* substantiating his conclusory assertions that an exception to State-agent immunity applies here, and so fails to overcome Jones' and Lamar's entitlement to State-agent immunity. Despite preemptive assertions in Count II that "[e]ach Defendant, Dunn, Jones, and Lamar acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law," doc. 24 ¶ 135, the Alabama Supreme Court made clear in *Ex parte Gilland* that a motion to dismiss on the basis of State-agent immunity should be granted where the State officer makes the required prima facie showing that State-agent immunity applies, and the plaintiff failed to make more than "conclusory allegations that [the state official] acted willfully, maliciously, fraudulently, or in bad faith." *Ex parte Gilland*, 274 So. 3d 976, 985 n.3 (Ala. 2018). "Rather," it held, "to survive [the] motion to dismiss, [the plaintiff] was required to plead *facts* that would support those conclusory allegations." *Id.* (emphasis in original).

Plaintiff's wrongful death claim still suffers from the deficiency pinpointed in *Gilland*: the Amended Complaint's factual allegations do not specify (1) any particular action undertaken by Jones or Lamar with any specificity, and (2) any way in which either of them failed to conform their conduct to ADOC regulations or other state laws in such a way that they led to Turner's death. *See also Robinson v. Rankin*, 815 F. App'x 330, 345 (11th Cir. 2020) (granting State-agent immunity where Plaintiff conclusorily complained that "[e]verything about the [traffic] stop was wrong,' but d[id] not identify any other law, rule, or regulation that [the Defendant] supposedly violated," because without more, plaintiff "ha[d] failed to show that [the Defendant] acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority.").

Moreover, to the extent Plaintiff's theory relies on an alleged constitutional violation to serve as the basis for overcoming State-agent immunity, *see*, *e.g.*, doc. 24 ¶¶ 131-133, Plaintiff's

wrongful death claim would still fail for the same reasons that his Eighth/Fourteenth Amendment claim in Count I of his Amended Complaint fails. While it is true that "when a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute, Ala. Code § 6-5-410," *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1047 (11th Cir. 2011), because Plaintiff has failed to state a viable constitutional claim for the reasons stated elsewhere in this brief, *see* Section B, *supra* at 8-18, Defendants Jones and Lamar remain entitled to State-agent immunity on Count II for the same reasons that they are entitled to qualified immunity on Plaintiff's claim in Count I.

Because Plaintiff's second count fails to make more than a conclusory assertion that "[e]ach Defendant, Dunn, Jones, and Lamar" acted "willfully, maliciously, fraudulently, or in bad faith," doc. 24 ¶ 135, so as to abrogate their State-agent immunity under *Cranman*'s first exception, and because Plaintiff has not adequately pleaded his constitutional claim against so as to proceed on his wrongful death claim under *Cranman*'s second exception, Defendants Jones and Lamar are entitled to State-agent immunity, and Plaintiff's State-law claim for wrongful death should be dismissed.

**Conclusion**

For the reasons stated above, the Court should dismiss all claims asserted against Defendants Jones and Lamar.

Respectfully submitted,

Steve Marshall,
*Attorney General*

/s Tara S. Hetzel
Tara S. Hetzel
*Deputy Attorney General*

/s Laura E. Howell
Laura E. Howell
*Assistant Attorney General*

State of Alabama
Office of Attorney General
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Tara.Hetzel@AlabamaAG.gov
Laura.Howell@AlabamaAG.gov

***Counsel for Defendants Jones and Lamar***

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 8th day of February, 2023, I electronically filed a copy of the foregoing Brief in Support of Motion to Dismiss of Defendants Patrice Jones and David Lamar with the Clerk of the Court via CM/ECF which will notify the following counsel of record:

Julian McPhillips, Jr.
David Sawyer
McPhillips Shinbaum, LLP
516 S. Perry St.
Montgomery, Alabama 36104

Matthew Reeves
William Richard Lunsford
Ellie Boles Putman
Mary Landon Whatley
Maynard Cooper & Gale PC
655 Gallatin St.
Huntsville, AL 35801

/s Tara S. Hetzel
*Deputy Attorney General*