IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **FRED TURNER, Administrator for the Estate of Lawrence Turner, deceased,** | |
| **Plaintiff,** | **Case No. 2:22-CV-00624-MHT-KFP** |
| **v.** | |
| **JEFFERSON DUNN, *et al.*,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF DUNN'S RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Jefferson Dunn ("Dunn") hereby submits this Memorandum of Law in Support of his Renewed Motion to Dismiss the Amended Complaint (doc. no. 24) filed by Plaintiff Fred Turner ("Plaintiff").

## INTRODUCTION

Plaintiff seeks to hold former ADOC Commissioner Jefferson Dunn personally liable for the death of an inmate, Lawrence Turner ("Turner"), allegedly as the result of an assault by other unidentified inmates at Bullock Correctional Facility ("Bullock"). Plaintiff does not and cannot allege that Dunn personally participated in or authorized the alleged assault, or even that he was present at Bullock when it occurred. Most importantly, Dunn's tenure as ADOC's Commissioner concluded over six months prior to Turner's assault. Plaintiff bases

his specious claims against Dunn upon Dunn's role as the former Commissioner of ADOC.

As discussed further below, the Court should dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) for at least the following three (3) reasons:

(1) Plaintiff fails to allege a plausible section 1983 claim against Dunn.

(2) Qualified immunity protects Dunn from Plaintiff's section 1983 claim; and

(3) Plaintiff's Count II for state law wrongful death remains entirely redundant of Count I.

Accordingly, Dunn respectfully requests that the Court dismiss Plaintiff's claim against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In addressing a pleading such as Plaintiff's Amended Complaint, a court must "first separat[e] out the complaint's conclusory legal allegations and then determin[e] whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 679). Plaintiff's Amended Complaint fails to allege a plausible claim against Dunn.

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that, during Turner's incarceration at Bullock Correctional Facility ("Bullock"), on April 2, 2021, unidentified inmates allegedly attacked Turner, resulting in "serious" injuries to Turner. (Doc. 24 at ¶ 115). ADOC personnel transported Turner to Baptist South Hospital in Montgomery, Alabama for medical treatment. (Id. at ¶ 116). Plaintiff alleges that Turner died from his injuries on May 5, 2021. (Id. at ¶ 117). Plaintiff alleges that, before the alleged assault, Turner informed unidentified officers at Bullock that unidentified inmates threatened him (id. at ¶ 109), but Plaintiff fails to allege that Turner or anyone else informed Dunn of these alleged threats.

Plaintiff's Amended Complaint asserts claims for "violation of Eighth and Fourteenth Amendments." (Doc. 24 at ¶¶ 118-128). Plaintiff includes only sparse allegations against Dunn. He alleges that Dunn served as ADOC's Commissioner and generally possessed responsibility for the operation and management of Alabama's prison system. (Id. at ¶ 7). Plaintiff generally claims that Dunn possessed awareness of a risk of harm to ADOC inmates, including Turner, but "responded to this known substantial risk in an unreasonable manner" because he "knew of ways to reduce the risks and harm, but knowingly or recklessly declined to act." (Id. at ¶ 104). Plaintiff fails to provide factual allegations identifying how Dunn's actions were unreasonable, or what Dunn could have done, but failed to do,

to prevent Turner's death. For the following reasons, Plaintiff's Amended Complaint fails to plead a plausible claim against Dunn, and, therefore, the Court should dismiss it.

## ARGUMENT

### I. PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A VALID SECTION 1983 CLAIM AGAINST DUNN.

Plaintiff seeks to hold Dunn personally liable for Turner's death from the alleged criminal activities of other inmates. Plaintiff must clear a high bar to impose personal liability on Dunn as a public servant under these circumstances. The Eleventh Circuit recently clarified the standard for establishing liability in Eighth Amendment deliberate indifference claims:

> 1. *First*, of course, the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [Farmer v. Brennan, 511 U.S. 825, 834].
>
> 2. *Second*, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," *id.* at 839, 114 S.Ct. 1970, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." *Id.* at 844-45, 114 S.Ct. 1970.

Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc). Importantly, the Wade Court distinguished a risk of harm caused by the official's own conduct from "some preexisting risk that the inmate plaintiff faced, without regard to its

origin or cause…" Id. at 1260. The Court noted that, in Farmer itself, "…the inmate's allegations—and thus the Court's decision concerning those allegations—were trained not just on the risks of violence and assault that *exist* in a prison's general population, but rather on the risks that the prison officials *created* by placing the inmate in a particular prison's general population." Id. at 1258. Moreover, the Court noted the Supreme Court's observation in Farmer that "'[t]he Eighth Amendment does not outlaw cruel and unusual ***conditions***; it outlaws cruel and unusual ***punishments***.'" Id, at 1257 (quoting Farmer, 511 U.S. at 837) (internal quotation marks omitted). Plaintiff failed to meet the requirements set forth in Wade.

### A. PLAINTIFF'S AMENDED COMPLAINT ALLEGES AN INCORRECT DATE FOR THE INCIDENT.

In his Amended Complaint, Plaintiff states that Turner died on May 5, 2021, while referencing Turner's death certificate.[1] (Doc. 24 at ¶ 6). However, Turner's death certificate indicates that he died on July 19, 2022. (**Exhibit A,** Turner's death certificate; see also **Exhibit B**, ADOC duty officer report regarding Turner's assault). Plaintiff's counsel filed a petition for letters of administration relying on Turner's death certificate. See In the Matter of the Estate of Lawrence James Turner; Montgomery County, Alabama Probate Court Case No.: 22-00646 (Book J00989 at 941). When considering a motion to dismiss, Courts generally may not consider

[1] Plaintiff actually attached the Montgomery County Probate Court Order Granting Letters of Administration as Exhibit A as opposed to a Death Certificate. (Doc. 24-1). The Order states that Plaintiff became the administrator of Turner's estate on September 13, 2022. (Id.).

matters outside of the pleadings without converting the motion to a motion for summary judgment. Johnson v. City of Atlanta, 107 F.4th 1292, 1298 (11th Cir. 2024). Two exceptions exist to the general conversion rule: "1) the incorporation-by-reference doctrine and (2) judicial notice." Baker v. City of Madison, Alabama, 67 F.4th 1268, 1276 (11th Cir. 2023). In the case at hand, the Court may use either exception to the conversion rule to consider Turner's death certificate, which demonstrates that Turner died in 2022 as opposed to 2021. John Hamm assumed as the role of ADOC Commissioner on January 1, 2022. (Edward Braggs, et al. v. John Hamm, et al., 2:14-cv-601-MHT (Docs. 3474 and 3476)). Therefore, Dunn's tenure as Commissioner ended over six months prior to Turner's death. The Court can take judicial notice of the date and/or utilize the incorporation by reference doctrine to establish it for purposes of this motion.

"A court's decision to take judicial notice of a fact is nothing more than a finding that the proffering party need not undertake the burden of litigating the existence of the fact." United States v. Falcon, 957 F. Supp. 1572, 1585 (S.D. Fla. 1997). "In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994). Therefore, the fact must be one that only an unreasonable person would insist on disputing. Id. Here, Turner's date of death can be accurately determined from Turner's death certificate, and the date of the incident can be accurately determined

from the duty officer report.

No reasonable dispute exists about the date of Turner's death. The state death certificate represents a public record, which is the precise type of evidence from which a Court should take judicial notice. See Ala. Code § 12-21-101; Est. of Rogers ex rel. Rogers v. Globe Life and Acc. Ins. Co., No. 2-13-cv-02013-LSC, 2015 WL 412919, at *6 (N.D. Ala. Jan. 30, 2015) (denying motion to strike amended death certificate and holding that it "was a public record that was equally available to" both parties). Under Federal Rule of Evidence 803(9), "public records of vital statistics," including "[a] record of a birth, death, or marriage, if reported to a public official in accordance with a legal duty," "are not excluded by the rule against hearsay." Fed. R. Evid. 803(9) (capitalization altered in first quotation). Indeed, Plaintiff, as the administrator of Turner's estate, relied on the death certificate in Montgomery County Probate Court for filing his petition for letters of administration. (See **Exhibit A**). Therefore, Plaintiff maintains no reasonable dispute over the authenticity of the death certificate, and the Court should take judicial notice of Turner's date of death as July 19, 2022.

Alternatively, the Court may consider the duty officer report and death certificate through the incorporation-by-reference doctrine. The Eleventh Circuit allows that "when resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document…if the document is (1) central

to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." Johnson, 107 F.4th at 1300. In Johnson, the Eleventh Circuit determined that the government's body camera and dash cam footage that depicted the events central to Plaintiff's excessive force claim without any gaps and provided a clear view of the force and technique used "easily satisfied" the incorporation-by-reference doctrine. Id. at 1300-01. Similarly, this Court may utilize the incorporation-by-reference doctrine to consider the death certificate and duty officer report[2] as both documents remain central to Plaintiff's claim and come from reputable sources whose authenticity cannot be reasonably questioned. See Johnson, 107 F.4th at 1300. The death certificate and duty officer report, like the body camera footage in Johnson, fill the gaps left from Plaintiff's vague and conclusory underlying facts, and provide additional information regarding the timing of Turner's death—a fact central to the complaint and determining proper parties. Therefore, this Court should consider the duty officer report and death certificate when considering Dunn's motion.

### B. PLAINTIFF'S AMENDED COMPLAINT FAILS TO ALLEGE DUNN'S INVOLVEMENT IN A CONSTITUTIONAL VIOLATION.

[2] At this point, Dunn does not request that the Court consider the factual summary contained in the duty officer report as factually accurate, understanding that the Court must credit Plaintiff's allegations as true in the presence of ambiguity. While Dunn maintains substantial disputes and concerns over the accuracy of Plaintiff's allegations, the Court need only consider Turner's date of death and the date of the incident for the purposes of this motion. Compare Doc. 24 ¶¶ 115-117, with Brown v. Dunn, No. 2:21-cv-440-MHT-KFP (Doc. 50, ¶¶ 114-116).

Plaintiff seeks monetary damages from Dunn in his individual, or personal, capacity. (Doc. No. 24, ¶ 7). To plausibly allege such a claim, Plaintiff must at a minimum allege Dunn's personal involvement in a constitutional violation. As the Court stated in Wade, Plaintiff must show that the defendant was "actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff…" Wade at 1262. Plaintiff's individual-capacity claim against Dunn fails to meet this standard.

Specifically, Plaintiff failed to plead any facts to suggest that Dunn personally or through direct command deprived Turner of his constitutional rights. Plaintiff fails to allege that Dunn witnessed the alleged attack or even was at Bullock at the time. Indeed, as stated above, Dunn did not even serve as the Commissioner of ADOC at the time of the incident or Turner's death. Plaintiff's allegation that Turner informed unidentified officers at Bullock of an alleged threat before the assault (doc. 24 at ¶ 108) fails to implicate Dunn at all—especially due to Dunn's resignation almost seven months before the incident. Instead of including specific factual allegations regarding Dunn's conduct, which he apparently could not, Plaintiff included only the following vague and conclusory allegations, with no supporting facts:

- "… There existed a history of widespread abuse placing Defendants Dunn, Jones, and Lamar on notice of the need to correct the alleged deprivation, and Defendants Dunn, Jones and Lamar failed to do

so. This further created a custom or policy resulting in each Defendant's deliberate indifference to the substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility. Defendants Dunn, Jones and Lamar were subjectively aware of this substantial risk of serious harm to prisoners, including Lawrence Turner, deceased." (Doc. No. 24 at ¶ 119).

- "With subjective knowledge of the substantial risk of serious harm caused by violent prisoners at the Bullock Correctional Facility, Defendants Dunn, Jones and Lamar did not respond and/or did not reasonably respond to the risk. Defendants Dunn, Jones and Lamar reasonably knew, or should have known, that this custom or policy would result in a substantial risk of serious harm to inmates, including Lawrence Turner, deceased, and acted or failed to act despite his or her knowledge of this substantial risk of serious harm." (Id., ¶ 120);

- "Defendants Dunn, Jones, and Lamar acted with deliberate indifference to this substantial risk in violation of the Eighth and Fourteenth Amendments, resulting in the deceased, Lawrence Turner's, injuries, and death." (Id., ¶ 123);

- "This deliberate indifference by Defendants Dunn, Jones and Lamar to the actual and substantial risk of serious harm at the Bullock Correctional Facility was unwarranted, unlawful, and excessive, and violated the individual rights afforded Lawrence Turner, deceased, by the Eighth Amendment and Fourteenth Amendment." (Id., ¶ 124); and

- "Defendants Dunn, Jones, and Lamar acted with a conscious disregard of the known consequences of their actions and/or omissions; and knew of, or should have known, and failed to prevent the deliberate indifference resulting in the serious

> injuries and death of Lawrence Turner, deceased."
> (Id., ¶ 125).

These vague allegations, along with the timing of the assault, fail to suggest that Dunn knew of any risk to Turner at the time of his death, much less that almost seven months after his resignation, Dunn possessed subjective knowledge that his own actions somehow created a substantial risk of harm to Turner, or any other inmate in ADOC custody at that time. In fact, Dunn, by his own actions, could not possibly create a risk to Turner in July 2022, as Dunn lacked the ability to act in any way as it related to the operation of any ADOC facility. Indeed, Plaintiff fails to, and cannot, plausibly allege a substantial risk of serious harm that Dunn "***created*** by his own conduct" rather than "some preexisting risk that the inmate plaintiff faced, without regard to its origin or cause." Wade, 106 F.4th at 1259-60 (emphasis added).

Moreover, to the extent Plaintiff's claims against Dunn rest on his status as a supervisor, "'[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)); see also Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999); Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994). Thus, merely alleging that an official held a supervisory position, even at the time of the incident, fails to state a section 1983 claim. Alleging that an official held a supervisory position almost

seven months before the incident certainly fails to state a claim.

## II. THE DOCTRINE OF QUALIFIED IMMUNITY BARS PLAINTIFF'S INDIVIDUAL-CAPACITY CLAIM AGAINST DUNN.

Even if Plaintiff could allege an underlying constitutional violation on the part of Dunn, Plaintiff fails to allege the type of conduct necessary to overcome qualified immunity and impose personal liability on him. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Thus, while qualified immunity constitutes an affirmative defense, a defendant may raise it on a motion to dismiss where the facts establishing the defense are evident on the face of the complaint. Iqbal, 556 U.S. at 672 (holding that qualified immunity represents "a limited 'entitlement not to stand trial or face the other burdens of litigation,'" and it is therefore appropriate for courts to decide the issue at an early stage, including at on a motion to dismiss) (quoting Mitchell, 472 U.S. at 526). Plaintiff's Amended Complaint articulates facts establishing Dunn's entitlement to qualified immunity.

"Qualified immunity offers 'complete protection for government officials sued in their individual capacities so long as 'their conduct violates no clearly established statutory or constitutional rights which a reasonable person would have known.'" Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quoting Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir. 2001)). The purpose of this immunity is

to allow government officials to carry out their discretionary duties without the "fear of personal liability or harassing litigation." See Anderson v. Creighton, 483 U.S. 635, 638 (1987); Lee, 284 F.3d at 1194 (internal citations omitted). "[Q]ualified immunity for government officials is the rule, liability and trials for liability [are] the exception." Alexander v. Univ. of N. Fla., 39 F.3d 290, 291 (11th Cir. 1994). Here, the rule unquestionably applies.

A public official must "first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee, 284 F.3d at 1194 (citing Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal citations omitted)). Once the official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. Id. Courts apply a two-part test in evaluating whether a plaintiff carries this burden. First, as a "threshold question," "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. Then, if a constitutional right would have been violated under the plaintiff's version of the facts, the court must determine "whether the right was clearly established." Lee, 284 F.3d at 1194.[3]

[3] In Pearson v. Callahan, the Supreme Court clarified that the order in which a court addresses each part of the qualified immunity analysis is not mandatory, but rather left to the sound discretion of the lower courts. 555 U.S. 223, 236-43 (2009).

Plaintiff concedes that Dunn acted within the scope of his discretionary authority. (Doc. No. 24, ¶ 7) (alleging Dunn "act[ed] under color of law and within the line and scope of his duties") (See Dang ex rel. Dang v. Sheriff, Seminole Cnty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) (holding that nurses acted in their discretionary authority when the Plaintiff alleged that each nurse acted "under color of state law within the course and scope of her employment…")). Since Dunn unquestionably acted within his discretionary authority, Plaintiff must plausibly allege that Dunn violated a clearly established constitutional right. As set forth above, Plaintiff cannot state a valid §1983 claim against Dunn. Accordingly, "'there is no necessity for further inquiries concerning qualified immunity.'" Harrison, 746 F.3d at 1299, n. 15 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Even if Plaintiff properly alleged a constitutional violation (he did not and cannot), he cannot establish a violation of *clearly established* law.

In considering whether alleged conduct violated clearly established law, courts "'look for 'fair warning' to [public officials] that the conduct at issue violated a constitutional right.'" Gaines v. Wardynski, 871 F.3d 1203, 1208 (11th Cir. 2017) (quoting Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017)). Generally, a plaintiff seeking to demonstrate a violation of clearly established law must "point to prior case law (from the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state) that is 'materially similar.'" Id. at 1209 (quoting

Jones at 851-52). The United States Supreme Court "repeatedly told courts not to define clearly established law at a high level of generality." City of Escondido, Cal. v. Emmons, 586 U.S. 38, 42 (2019) (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018)(internal alterations omitted)).

Plaintiff can point to no prior caselaw suggesting that Dunn as a former ADOC Commissioner should have been on notice that his own conduct violated Turner's constitutional rights.[4] Plaintiff certainly can provide no case law demonstrating a finding of individual liability for an off-site official who left his position almost seven months prior to the predicating event to a lawsuit. To the contrary, caselaw plainly establishes that supervisory liability is not appropriate in these circumstances. See Marbury, 936 F.3d at 1233-38 (no liability where warden and correctional officer allegedly ignored plaintiff's requests for transfer before attack by fellow inmate and knew of a general risk of violence within the prison); Harrison, 746 F.3d at 1299-02 (no supervisory liability where complaint alleged that warden knew of incidents of inmate-on-inmate violence, but evidence did "not indicate that inmates were 'exposed to something even approaching the constant threat of violence'") (quoting Purcell., 400 F.3d at 1321). Courts have granted

[4] In a recent Eleventh Circuit case, Judge Ed Carnes, in concurrence, indicated that "[t]he entire purpose of going en banc in Wade was to throw into the judicial dumpster the unsatisfactory negligence-based measures of deliberate indifference and the decisions applying those measures, and replace them with the criminal recklessness standard and decisions applying it." Stalley v. Cumbie, 124 F.4th 1273, 1294-95 (11th Cir. 2024)(Ed Carnes, J., concurring).

motions to dismiss in similar circumstances, even where the complaint named the individual who served as Commissioner at the time of the incident. See, e.g., Pilcher v. Dunn, Case No. 4:21-cv-00204-ACA, 2023 WL 2756978, at **5-6 (N.D. Ala. Mar. 31, 2023); George v. Wexford, Case No. 2:22-cv-434-ECM, 2024 WL 1120110, at **5-7 (M.D. Ala. Mar. 14, 2024). Accordingly, caselaw provided Dunn with no notice that he could face liability in these circumstances, and he remains entitled to qualified immunity from Plaintiff's individual-capacity claim.

## III. PLAINTIFF'S COUNT II REMAINS ENTIRELY REDUNDANT OF COUNT I'S SECTION 1983 CLAIMS, AND THEREFORE, SHOULD BE DISMISSED.

As this Court ruled previously, in granting Wardens Jones and Lamar's motion to dismiss Count II, Plaintiff's Count II simply repeats the allegations contained in Count I. (Doc. 54 at 30-32). Indeed, Plaintiff's allegation that Dunn proximately caused Turner's death, though incorrect in both instances, represents the critical, foundational component of both claims, and, therefore, the Court should dismiss Count II as redundant of Count I. (Doc. 54 at 33).

Even if Plaintiff alleged a unique claim for wrongful death, for the same reasons Dunn receives the protection of qualified immunity, Dunn also benefits from the protection of State-agent immunity. Under Alabama law, Dunn, as a former state official sued related to his tenure as Commissioner, receives immunity from all personal civil liability for claims arising from the official "formulating plans, policies, or designs" and/or "exercising his or her judgment in the administration of

a department or agency of government, including, but not limited to . . . making administrative adjudications . . ., allocating resources," or "hiring, firing, transferring, assigning, or supervising personnel . . . ." Ex parte Butts, 775 So. 2d 173, 177-78 (Ala. 2000); Giambrone v. Douglas, 874 So. 2d 1046, 1057 (Ala. 2003) ("The immunity afforded State agents who exercise their judgment . . . is not abrogated for negligent and wanton behavior."). This well-recognized State-agent immunity applies here.

The Alabama Supreme Court established a burden-shifting process when a defendant raises the State-agent immunity defense. Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006). Under this framework, the "state-agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity." Id. (citations omitted). Once the official makes such a showing, "the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith or beyond his or her authority." Id. Plaintiff cannot overcome State-agent immunity here.

As stated above, Plaintiff's allegations establish Dunn's entitlement to State-agent immunity. (See supra at 13-14). Further, the Alabama Supreme Court recognized that ADOC employees function as State officials and receive State-agent immunity when fulfilling the duties of their employment. Carpenter v. Tillman, 948 So. 2d 536, 538 (Ala. 2006). Thus, Plaintiff now bears the burden of alleging that

Dunn acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." Reynolds, 946 So. 2d at 452. Plaintiff failed to plausibly allege such facts, nor could he given that Dunn left his position almost seven months before the incident.

Plaintiff makes no factual allegations to support any exception to State-agent immunity. (See generally, Doc. No. 24, ¶¶ 129-137). As a preliminary matter, Plaintiff fails to allege that Dunn possessed any authority whatsoever with respect to any ADOC facility at the time of the alleged incident. Moreover, where Dunn simply performed his job, even if he made a mistake, "it is the protection of officials engaged in such discretionary activities that is the purpose of State-agent immunity." Ex parte Hugine, 256 So. 3d 30, 57 (Ala. 2017); see also Ex parte Moulton, 116 So. 3d 1119, 1141 (Ala. 2013) (State-agent immunity bars claims against state officials based on actions taken in their official capacities, as, in effect, an action against the State). Because Dunn, as alleged by Plaintiff, performed his administrative duties at all times under color of state law, he must receive protections of State-agent immunity as to Plaintiff's state law claim. supra at 13-14. Further, as established above, Plaintiff cannot allege that Dunn acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority" since he left his position seven months prior to Turner's assault. Reynolds, 946 So. 2d at 452. Accordingly, even if the Court determined that Plaintiff's state law wrongful death claim comprised a

separate cause of action, the Court should still dismiss Dunn under the doctrine of State-agent immunity. In any event, Plaintiff cannot allege that Dunn took any action that "caused" Turner's death. Ala. Code § 6-5-410. Accordingly, Plaintiff's wrongful-death claim fails.

## CONCLUSION

For the foregoing reasons, Dunn respectfully requests that this Court dismiss the claim asserted against him by Plaintiff.

Dated: August 4, 2025

Respectfully submitted,

*/s/ Daniel J. Chism*
Daniel J. Chism

*One of the Attorneys for Dunn*

William R. Lunsford
Daniel J. Chism
**Butler Snow LLP**
200 West Side Square
Suite 100
Huntsville, Alabama 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
daniel.chism@butlersnow.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system and/or U.S. Mail on this 4th day of August 2025:

K. David Sawyer
**MCPHILLIPS SHINBAUM, LLP**
516 S. Perry Street
Montgomery, Alabama 36104
Telephone: (334) 262-1911
Facsimile: (334) 263-2321
kdsawyer64@outlook.com

*Attorneys for Plaintiff*

Tara S. Hetzel
**STATE OF ALABAMA**
**OFFICE OF ATTORNEY GENERAL**
501 Washington Avenue
Montgomery, Alabama 36130-0512
Telephone: (334) 242-7300
Fax: (334) 353-8400
tara.hetzel@alabamaag.gov

*Attorney for Patrice Jones and David Lamar*

*/s/ Daniel J. Chism*
Of Counsel